79 N.J. 422 (1979)
400 A.2d 1189
JANINA TEVIS, PLAINTIFF-RESPONDENT AND CROSS-APPELLANT,
v.
MICHAEL TEVIS, JR., DEFENDANT-APPELLANT AND CROSS-RESPONDENT.
The Supreme Court of New Jersey.
Argued November 13, 1978.
Decided April 5, 1979.
*424 Mr. Ira D. Dorian argued the cause for appellant (Mr. Matthew Grayson, attorney).
Mr. Alan Wasserman argued the cause for cross-appellant (Messrs. Wilentz, Goldman and Spitzer, attorneys; Mr. Frederick J. Dennehy, on the brief).
The opinion of the court was delivered by HANDLER, J.
Plaintiff Janina Tevis instituted a suit for damages for injuries received as a result of a physical beating administered by her husband, Michael Tevis. This occurred in the early morning of May 14, 1973. The suit was commenced on July 7, 1975. Defendant brought a motion for summary judgment to dismiss the complaint, claiming that the action was barred by the two-year statute of limitations, N.J.S.A. 2A:14-2. That motion was denied. The trial court also ruled that the action was not barred by the doctrine of interspousal immunity since the parties were divorced at the time of the action. The matter proceeded to trial and a jury returned a verdict awarding plaintiff $25,000 in compensatory and $10,000 in punitive damages.
In a reported decision, Tevis v. Tevis, 155 N.J. Super. 273 (1978), the Appellate Division affirmed as to compensatory damages, holding that neither the bar of the statute of limitations nor that of interspousal immunity applied in this case. The court, however, reversed the judgment as to punitive damages on the ground that the trial court improperly prevented defendant from submitting proof of provocation in mitigation of those damages. The defendant petitioned this Court for certification on the statute of limitations and interspousal immunity issues and the plaintiff cross-petitioned on the issue of mitigation of punitive damages. This Court certified both petitions. 77 N.J. 483 (1978). We reverse the judgment below on the ground that the action is time-barred and remand the matter to the trial court for the entry of summary judgment in favor of defendant.
*425 According to the trial testimony of Mrs. Tevis and two of her children, she had returned home in the early morning on May 14, 1973 after having spent the evening out. Shortly after entering the house her husband began to beat her. Plaintiff suffered substantial injuries which were corroborated by the testimony of her treating physician and by photographs of her face and body taken shortly after the event. Defendant denied having struck his wife and claimed she had injured herself when she slipped and fell while trying to kick him during the course of an argument. He also asserted by way of a proffer of proof that the argument erupted when he returned home that night and he became provoked upon seeing his wife with another man in a car parked in front of the house.
Following this incident, plaintiff sought the advice of an attorney. She instituted a criminal complaint against her husband in the local municipal court which was later dismissed. On May 22, 1975 the parties were divorced. On July 7, 1975, some six weeks after the divorce and over two years after the assault and battery, plaintiff brought this tort action against the defendant for personal injuries.
The statute of limitations relevant to this kind of action, N.J.S.A. 2A:14-2, provides that:
Every action at law for an injury to the person caused by the wrongful act * * * of any person within this state shall be commenced within 2 years after the cause of any such action shall have accrued.
The trial court held that, because the bar of interspousal immunity prevented the successful maintenance of a suit by a wife against her husband during marriage for injuries arising from an intentional tort, plaintiff's cause of action did not accrue until that bar was lifted by the parties' divorce. Since the lawsuit was instituted well within two years of the divorce, the statute of limitations was deemed not to bar the action. The Appellate Division, while agreeing with the result reached by the trial court, disagreed with its reasoning. *426 The appellate court stated that, while the interspousal immunity doctrine would have actually barred the instant suit if it had been brought earlier in time, that disability was removed by this Court's decision in Small v. Rockfeld, 66 N.J. 231 (1974). The court characterized that case as effectively extending the abolition of the doctrine to interspousal torts based on gross negligence and intentional injury. 155 N.J. Super. at 277. The Appellate Division concluded that the present action thus became maintainable, and therefore accrued, on the date Small v. Rockfeld was decided, namely, December 17, 1974, and, since the statute of limitations began to run from that time, the lawsuit was timely filed within two years of that date.

I
The thinking of the Appellate Division with respect to the application of the doctrine of interspousal immunity to intentional or egregious torts raises its own conceptual difficulties. Since we have determined that this action is barred by the statute of limitations, there would be no need to dwell on the Appellate Division's analysis of the interspousal immunity doctrine in this case except that its perception of the doctrine has contributed to a result which is incorrect.
The subject of interspousal tort immunity has been treated comprehensively and exhaustively in the recent decision of Merenoff v. Merenoff, 76 N.J. 535 (1978). We there traced with some care the evolution of the doctrine. Id. 539-547. Our decision definitively abrogated the doctrine of immunity with respect to interspousal torts with certain limited exceptions. Id. at 557. It is clear from the facts of those companion cases and from the statement of our holding that the abolition of the doctrine pertained to tortious conduct generally encompassing not only conventional negligence but also intentional acts, as well as other forms of excessive behavior such as gross negligence, recklessness, wantonness, and the like. The only kind of marital conduct excepted *427 from the abolition was that involving marital or nuptial privileges, consensual acts and simple, common domestic negligence, to be defined and developed on a case-by-case approach. Id. at 557, 558-559. The inclusion of intentional and aggravated torts within the abolition of interspousal immunity in Merenoff is underscored by our approving reference to the decision of the Appellate Division in this very case for the proposition that it "refus[ed] to apply interspousal immunity to a claim based upon an intentional tort committed by a husband against his wife." Id. at 546.
The Appellate Division believed that the case of Small v. Rockfeld, decided three years before Merenoff, sounded the death knell of the interspousal immunity doctrine for intentional torts. Yet, arguably Small v. Rockfeld need not have treated the issue of interspousal immunity. Although the defendant in that action asserted the defense of both the interspousal and interfamilial doctrines, the action was brought under the Wrongful Death Act (N.J.S.A. 2A:31-1 et seq.) for the pecuniary loss sustained by the decedent's infant daughter. There was no claim on behalf of the deceased wife which would invoke the marital immunity bar. In any event the marital relationship between the parties had been dissolved by the death of the wife, a situation earlier recognized as not raising the interspousal bar. Long v. Landy, 35 N.J. 44 (1961). Moreover, the Court in Small v. Rockfeld expressed the view that it was not its decision so much as the important case of Immer v. Risko, 56 N.J. 482, decided four years before in 1970, which effectively interred the doctrine. Small v. Rockfeld, supra, 66 N.J. at 241. Indeed, the coup de grace of the interspousal immunity doctrine for intentional torts might be thought to have been actually dealt by the Appellate Division in this case, a possibility which occurred to us in Merenoff, supra, 76 N.J. at 546.
The only point of this schoolmen's discussion is to highlight the uncertainty of using the demise of the doctrine of interspousal immunity as a tool for applying the statute of limitations. The nebulous state of the law of marital immunity *428 permits it to cater to anyone's predilections so far as invoking the statute of limitations. Moreover, this approach would permit the assertion of marital tort claims long after the commission of the tort itself and would encourage the resurrection of old marital grievances, a disfavored policy consistently rejected by our courts. Cf. Merenoff v. Merenoff, supra at 560; Darrow v. Hanover Twp., 58 N.J. 410 (1971).
The immunity doctrine is also unsatisfactory if marshalled in this case as a theoretical construct, as part of the legal definition of the tort and a determinant of when the tort itself may be said to have occurred. The Appellate Division characterized the interspousal immunity doctrine as "so elemental to the maintainability of the action that its existence will defeat the action even if not properly pleaded". 155 N.J. Super. at 279. For this reason, it believed that as long as the doctrine was viable, plaintiff's cause of action could not arise.
In reaching this conclusion, the lower court focused upon the consequences of the failure to plead or otherwise assert immunity as an affirmative defense to a timely-filed tort action, citing Faul v. Dennis, 118 N.J. Super. 338, 343-344 (Law Div. 1972). But compare Holmes v. Russ, 113 N.J. Super. 445 (Law Div. 1971). Cf. O'Connor v. Abraham Altus, 67 N.J. 106, 116 (1975); Rappeport v. Flitcroft, 90 N.J. Super. 578 (App. Div. 1966). We are not dealing here, however, with that kind of problem. The present question is whether the statute of limitations should serve to bar this action, not whether marital immunity, though not pleaded, would have served as a bar had the action been brought within time. More to the point, interspousal immunity, when asserted as a bar to bringing an action, has not been treated invariably by our courts as a substantive element inhering in the cause of action. Despite certain dicta in Kennedy v. Camp, 14 N.J. 390, 396 (1954) that "* * * a wife cannot sue her husband for beating her during coverture, even after divorce", later decisions recognized the right to bring an interspousal cause of action in tort even though the tort was committed while *429 the parties were married. E.g., Small v. Rockfeld, supra; Long v. Landy, supra; Sanchez v. Olivarez, 94 N.J. Super. 61 (Law Div. 1967); cf. Eule v. Eule Motor Sales, 34 N.J. 537 (1961), cited and discussed in Merenoff v. Merenoff, supra, 76 N.J. at 544-545. And, following Immer v. Risko, it should have been just as obvious that the continuing marriage of the parties per se would not prevent the bringing of a lawsuit for personal injuries based on tort.
We have recognized in principle that immunities serve primarily to bar or curtail recovery  to absolve from liability, W. Prosser, Law of Torts 970 (4th ed. 1971)  rather than to define liability or describe what constitutes wrongful conduct. Merenoff v. Merenoff, supra at 547. It was appreciated by this Court quite some time ago that "[t]he negligent infliction of injury by a husband upon his wife is a wrongful act" and that "[i]t does not lose this quality merely because the wife is prohibited by the common law doctrine from enforcing liability for her damage". Long v. Landy, supra, 35 N.J. at 50. It may be that there are contexts in which it is plausible to conclude that an immunity is a constituent element of a cause of action; nevertheless, strong considerations, grounded in a public policy which favors the redress of wrongfully inflicted injuries, dictate that immunity, when used as a shield to defeat recovery, be established affirmatively. Cf. Ellison v. Housing Authority of South Amboy, 162 N.J. Super. 347, 351 (App. Div. 1978) (construing provisions of the New Jersey Tort Claims Act, N.J.S.A. 59:1-1 et seq.).
Aside from the characterization of marital immunity as either a substantive element of a cause of action or an affirmative defense to a cause of action, the doctrine should not be viewed as a catalyst which renders wrongful acts innocuous. Cf. Merenoff v. Merenoff, supra; Long v. Landy, supra. Additionally, it is well to note that historically interspousal tort immunity was a common law tenet with the inherent mutability of the common law. As a common law principle, it has always been vulnerable to challenge and peculiarly *430 subject to judicial modification in light of changing social conditions and ascendant notions of public policy. E.g., Merenoff v. Merenoff, supra, 76 N.J. at 548-549, citing State v. Culver, 23 N.J. 495, 505, cert. den. 354 U.S. 925, 77 S.Ct. 1387, 1 L.Ed.2d 1441 (1957).
We are satisfied that these reasons countermand the use of marital immunity to toll the operation of the statute of limitations upon a cause of action. 51 Am. Jur.2d Limitation of Actions § 191 at 758-759. It is our conclusion that the assumed existence of the doctrine of interspousal immunity at the time plaintiff was wrongfully injured by her husband did not, in this case, prevent her cause of action from then and there accruing.

II
The question may be raised as to whether plaintiff's cause of action having accrued at the time she suffered injuries at the hands of her husband, the running of the statute of limitations should be tolled for other reasons. The general statute of limitations governing a tort action such as plaintiff's, N.J.S.A. 2A:14-2, is predicated on certain assumed objectives. These policies would appear to be met by the application of the statute as a bar to plaintiff's suit in this case.
Primarily, statutes of limitations are statutes of repose. See, e.g., Fox v. Passaic General Hospital, 71 N.J. 122 (1976); Lopez v. Swyer, 62 N.J. 267 (1973); Fernandi v. Strully, 35 N.J. 434 (1961). They reflect a public policy and underlying legislative judgment that claims for redress resulting from the injurious acts of others shall be settled relatively soon, within a legislatively-specified period of time, notwithstanding the vagaries of human conduct and the uncertainties of human affairs. See Rothman v. Silber, 90 N.J. Super. 22 (App. Div.), certif. den. 46 N.J. 538 (1966). Limitations statutes are designed to induce the assertion of claims within a reasonable time so that the charged party has a fair opportunity to defend. These statutes spur diligence *431 in the vindication of legal claims in order to avoid the unfairness and injustice which stem from litigation based on distant circumstances and faded memories. Kaczmarek v. New Jersey Turnpike Authority, 77 N.J. 329 (1978); Rosenau v. City of New Brunswick and Gamon Meter Co., 51 N.J. 130 (1968).
With respect to tort actions, the Legislature has not defined in the statute of limitations when a cause of action "shall have accrued" (N.J.S.A. 2A:14-2). The accrual of a cause of action in the tort field has been a matter for judicial determination. Rosenau v. City of New Brunswick and Gamon Meter Co., supra; Fernandi v. Strully, supra; compare Lawrence v. Bauer Publishing & Printing, Ltd., 78 N.J. 371 (1979) (an action for libel arises upon "publication", N.J.S.A. 2A:14-3). We have long held that a cause of action in tort accrues at the time when a right first arises to institute and maintain an action against a wrongdoer. E.g., Tortorello v. Reinfeld, 6 N.J. 58 (1950); Fredericks v. Dover, 125 N.J.L. 288 (E. & A. 1940). The right to maintain an action is not a prediction of success; it does not import the notion that the claimant will prevail on the merits or overcome all legal disabilities or affirmative defenses. It means simply the right to commence the action and to remain in court for purposes of having the claim adjudicated, as well as the opportunity to counter any legal or factual defenses which are raised. When this right attaches, the cause of action accrues. This is usually at the time of the commission of the wrong and the suffering of injury. Rosenau v. City of New Brunswick and Gamon Meter Co., supra; Diamond v. N.J. Bell Telephone Co., 51 N.J. 594 (1968); Tortorello v. Reinfeld, supra, 6 N.J. at 65.
In certain circumstances, the court has attempted to mitigate the sometimes harsh results arising from the inflexible application of this standard by invoking the "discovery" rule. Under this rule, the statute of limitations is deemed not to begin to run until the injured party knows, or *432 by the exercise of reasonable diligence should have learned, that he may have a basis for an actionable claim. E.g., Burd v. New Jersey Telephone Company, 76 N.J. 284 (1978); Lopez v. Swyer, supra; Alfone v. Sarno, 139 N.J. Super. 518 (App. Div. 1976). Thus, when a party is either unaware that he has sustained an injury or, although aware that an injury has occurred, he does not know that it is, or may be, attributable to the fault of another, the cause of action does not accrue until the discovery of the injury or facts suggesting the fault of another person. See Lopez v. Swyer, supra. It is a rule most frequently summoned in medical malpractice cases, see e.g., Fox v. Passaic General Hospital, supra; Moran v. Napolitano, 71 N.J. 133 (1976); Fernandi v. Strully, supra; Alfone v. Sarno, supra, although it has found some other applications in the tort field, e.g., Diamond v. N.J. Bell Telephone Co., supra (improper installation of an underground conduit); New Market Poultry Farms, Inc. v. Fellows, 51 N.J. 419 (1968) (error in land survey).
This rule is of no aid to plaintiff in the present case. She knew of her injuries and was simultaneously aware of their cause in the person of her husband at the moment of the assault and battery. That she might not then have prevailed in a lawsuit if the interspousal immunity bar were raised and asserted, even if true, does not mean that her cause of action did not then arise. The discovery rule has been, and is, pertinent only in those circumstances in which a plaintiff was not, and reasonably could not be, aware of the underlying factual basis for a cause of action. Burd v. New Jersey Telephone Company, supra, 76 N.J. at 291-292; Rankin v. Sowinski, 119 N.J. Super. 393 (App. Div. 1972); Holmes v. Russ, supra. That is not this case. Plaintiff's cause of action accrued when she was battered and the running of the statute of limitations from that point in time was not postponed by the undiscoverability of any latent facts crucial to the existence of the cause of action.

*433 III
The question remains as to whether other equitable considerations may relieve plaintiff of the onus of the statute of limitations. "* * * [I]n each case [involving the application of the statute of limitations] the equitable claims of opposing parties must be identified, evaluated and weighed." Lopez v. Swyer, supra, 62 N.J. at 274. We have noted that, in appropriate situations, it would be remiss of the court to apply strictly and uncritically a statutory period of limitations without conscientious consideration of the circumstances of the individual case. Kaczmarek v. New Jersey Turnpike Authority, supra.
We must in the final analysis be governed by an objective assessment of the equities, not by an understandable sympathy for plaintiff's plight and a pardonable repugnance toward defendant's conduct. Plaintiff apparently suffered substantial injuries but she was not incapacitated or prevented by her physical or mental trauma from pursuing her legal rights. Kyle v. Green Acres at Verona, Inc., 44 N.J. 100 (1965); accord, White v. Violent Crimes Compensation Board, 76 N.J. 368 (1978). Indeed, she was fit enough to confer with an attorney and to bring a criminal proceeding against defendant following the incident. Even though defendant's conduct was grotesque and inexcusable, there is no claim that he defrauded plaintiff or that she relied upon any misleading or deceitful misrepresentation of his in forstalling civil redress. Cf. Bowler v. Fidelity & Casualty Co. of N.Y., 53 N.J. 313, 327-329 (1969); State v. United States Steel Corp., 22 N.J. 341 (1956); Rothman v. Silber, supra, 90 N.J. Super. at 33-34.
In actuality, plaintiff initiated a divorce action against defendant. Although wrongful marital conduct would obviously be germane in those proceedings for any number of reasons, it has not been shown that plaintiff ever brought forth her damage claims for the tortious injuries she suffered. A wife's civil claims for monetary compensation against her *434 husband, and his contingent liability therefor, would seem a relevant circumstance affecting the parties' financial status in the context of a matrimonial controversy. Cf. Martindell v. Martindell, 21 N.J. 341 (1956); Schiff v. Schiff, 116 N.J. Super. 546 (App. Div. 1971), certif. den. 60 N.J. 139 (1972); also, Mey v. Mey, 79 N.J. 121 (1979); Painter v. Painter, 65 N.J. 196 (1974); Rothman v. Rothman, 65 N.J. 219 (1974). Hence, in assessing the equities in this present case from the perspective of the statute of limitations, it is not unfair to conclude that, during the pendency of the matrimonial litigation, plaintiff had given some thought to the possibility of asserting a claim against her husband as evidenced by the fact that such a claim was brought within weeks after the grant of the divorce. Since the circumstances of the marital tort and its potential for money damages were relevant in the matrimonial proceedings, the claim should not have been held in abeyance; it should, under the "single controversy" doctrine, have been presented in conjunction with that action as part of the overall dispute between the parties in order to lay at rest all their legal differences in one proceeding and avoid the prolongation and fractionalization of litigation. Cf. Falcone v. Middlesex County Med. Soc., 47 N.J. 92 (1966); Applestein v. United Board & Carton Corp., 35 N.J. 343, 356 (1961); Ajamian v. Schlanger, 14 N.J. 483, cert. den. 348 U.S. 835, 75 S.Ct. 58, 99 L.Ed. 659 (1954); also, McFadden v. Turner, 159 N.J. Super. 360, 368-372 (App. Div. 1978); Wm. Blanchard Co. v. Beach Concrete Co., Inc., 150 N.J. Super. 277, 292-294 (App. Div.), certif. den. 75 N.J. 528 (1977); Leisure Technology v. Klingbeil, 137 N.J. Super. 353, 357 (App. Div. 1975).
In the instant case, plaintiff neither filed a timely lawsuit nor was she prevented from so doing. She was mindful of her rights, as well as her wrongs, but neglected to pursue them when there was an opportunity to do so within the time allowed by law. For these reasons, we conclude that plaintiff's action was barred by the statute of limitations. This obviates *435 consideration of the issue of provocation in connection with the claim for punitive damages.
The decision of the Appellate Division is reversed and the case remanded for entry of judgment in favor of defendant.
SULLIVAN, J. (concurring in result).
I concur in the result reached by the majority but not for the reasons expressed in its opinion. This is not a statute of limitations case. On May 14, 1973, when Mrs. Tevis was assaulted by Mr. Tevis, the doctrine of interspousal immunity was in effect in this State and she did not have a cause of action for damages against her husband. Our subsequent abrogation of this doctrine did not affect interspousal torts committed prior thereto. Cf. Merenoff v. Merenoff, 76 N.J. 535, 560 (1978). The Appellate Division erred in holding to the contrary.
PASHMAN, J., dissenting.
The majority today rules that a woman who was severely beaten by her former husband will not be compensated for the injuries which she suffered. In its view, her claim for relief was filed six weeks later than a literal reading of N.J.S.A. 2A:14-2 would allow. In so holding, the majority both ignores the purposes underlying personal injury statutes of limitations and departs from this Court's heretofore "equitable" approach in dealing with questions concerning the timeliness of suits.
I cannot subscribe to this result. Ms. Tevis did not institute suit immediately after the beating was inflicted because such an endeavor would have amounted to a wholly useless act. Her claim would have been dismissed pursuant to the archaic and now discredited doctrine of interspousal immunity. She did, however, file suit well within two years of our abrogation of the interspousal bar in Small v. Rockfeld, 66 N.J. 231 (1974). Indeed, her suit was commenced a mere two years and six weeks from the date of injury. Given this circumstance, defendant does not  nor can he reasonably  contend *436 that he was prejudiced by the delay. Nor were the triers of fact compelled to render a decision based upon "stale" evidence. I would therefore hold that Ms. Tevis' cause of action did not "accrue" within the meaning of N.J.S.A. 2A:14-2 until we rendered our decision in Small v. Rockfeld, supra. Consequently, that cause of action is not time-barred.

I
N.J.S.A. 2A:14-2  the statute of limitations applicable to personal injury suits  provides that an action for damages must be commenced within two years after "the cause of * * * action shall have accrued." Thus, the main question here is when did Ms. Tevis' claim in fact "accrue." The majority, relying upon technical pleading concepts relating to the distinction between an "element of a prima facie case" and an "immunity to suit," concludes that the date of accrual was May 14, 1973  the day upon which the beating was inflicted. Consequently, a literal application of N.J.S.A. 2A:14-2 leads them to dismiss the present suit, inasmuch as it was filed six weeks after May 14, 1975.
Such a mechanical construction of N.J.S.A. 2A:14-2 is both unwarranted and unwise. Due to the absence of any legislative specification as to the precise moment when a claim "accrues," this Court has long held that we are under a duty to fashion rules which best serve the interests of justice. See, e.g., Farrell v. Votator Div. of Chemetron Corp., 62 N.J. 111, 121 (1973); Fernandi v. Strully, 35 N.J. 434, 449 (1961). In carrying out this duty, technical legal concepts and per se rules are to be eschewed. Rather, we must scrutinize all of the facts and circumstances of a particular case in order to determine whether barring suit will in fact serve the goals underlying the limitations period. See, e.g., Kaczmarek v. New Jersey Turnpike Auth., 77 N.J. 329, 338 (1978); White v. Violent Crimes Compensation Bd., 76 N.J. 368, 379-387 (1978).
*437 The primary purpose of personal injury statutes of limitations is to compel the exercise of a right of action within a reasonable time so that the opposing party has a fair opportunity to defend. See, e.g., Kaczmarek, supra, 77 N.J. at 337; Union City Housing Auth. v. Commonwealth Trust Co., 25 N.J. 330, 335 (1957). Another goal furthered by such statutes is that of stimulating litigants to pursue their causes of action diligently. See, e.g., Kaczmarek, supra, 77 N.J. at 337; Farrell, supra, 62 N.J. at 115. Finally, limitations periods serve to weed out stale, frivolous and vexatious claims. See, e.g., Kaczmarek, supra, 77 N.J. at 337-338.
In situations where these goals will not be furthered by barring suit, we have not hesitated in departing from a strict and uncritical application of the statutory period. Thus, for example, this Court has developed the "discovery rule" in order to ameliorate the sometimes harsh results that might ensue were causes of action always deemed to accrue at the moment an allegedly wrongful act is committed. Under that rule,
* * * in an appropriate case a cause of action will be held not to accrue until the injured party discovers, or by an exercise of reasonable diligence and intelligence should have discovered that he may have a basis for an actionable claim.
[Lopez v. Swyer, 62 N.J. 267, 272 (1973)]
See, e.g., Burd v. New Jersey Telephone Co., 76 N.J. 284, 291 (1978); Moran v. Napolitano, 71 N.J. 133 (1976); Fox v. Passaic General Hospital, 71 N.J. 122 (1976); Fernandi v. Strully, 35 N.J. 434 (1961).
The rationale underlying the discovery rule is not difficult to fathom. A plaintiff who is unaware of the commission of a tort or the defendant's responsibility therefor cannot be said to have slept on his rights until he discovers the facts which equate in law with a cause of action. Moreover, the defendant in such a situation cannot rightly complain that suit was not immediately instituted, inasmuch as his concealment of the *438 wrong or his responsibility therefor directly caused the delay. Hence, suit is allowed because dismissal would not further the underlying goals of the statute of limitations. See, e.g., Moran, supra; Fox, supra; Lopez, supra; Fernandi, supra.
A similar rationale lies at the root of the doctrine of "equitable estoppel." Under that doctrine, a defendant is precluded from invoking the statute of limitations as an affirmative defense if his wrongful conduct or representations have caused a plaintiff's claim to be subject to the statute's bar. In the main, our courts have applied the doctrine in situations in which: (1) a defendant has lulled a plaintiff into a false sense of security by representing that a claim will be amicably settled without the necessity for litigation, see, e.g., Friedman v. Friendly Ice Cream Co., 133 N.J. Super. 333 (App. Div. 1975); Howard v. West Jersey and Seashore R.R. Co., 102 N.J. Eq. 517 (Ch. Div. 1928), aff'd o.b., 104 N.J. Eq. 201 (E & A 1929); or (2) a defendant has failed to disclose information which he had a statutory duty to disclose, and such non-disclosure prevented a plaintiff from realizing that he possessed an actionable claim, see, e.g., State v. United States Steel Corp., 22 N.J. 341, 355-360 (1956); Noel v. Teffeau, 116 N.J. Eq. 446 (Ch. Div. 1934). Mindful, however, of the equitable underpinnings of the doctrine, we have not hesitated to estop a defendant in any case in which his wrongful conduct has prevented the timely filing of a complaint. See, e.g., Barres v. Holt, Rinehart & Winston, Inc., 74 N.J. 461 (1977), aff'ing o.b., 141 N.J. Super. 563 (App. Div. 1976), aff'ing o.b., 131 N.J. Super. 371 (Law Div. 1974); Kyle v. Green Acres at Verona, Inc., 44 N.J. 100, 111 (1965); Patrick v. Groves, 115 N.J. Eq. 208, 210 (E & A 1934). As in the case of the "discovery rule," suit is not barred because dismissal will not further the goals underlying the limitations period.
Contrary to the assertions of the majority, this Court has never intimated that statutes of limitations must be literally applied in every case whose factual pattern does not *439 fall within the contours of the discovery rule or the doctrine of equitable estoppel. In fact, we have continuously emphasized that "it would be derelict * * * to apply strictly and uncritically a statutory period of limitations [in any situation] without considering conscientiously the circumstances of the individual case and assessing the Legislature's objective in prescribing the time-limitation as related to the particular claim." Kaczmarek, supra, 77 N.J. at 338; see, e.g., White, supra, 76 N.J. at 379; Ward v. McLellan, 117 N.J. Eq. 475 (E & A 1935).
An examination of the facts of this particular case shows clearly that dismissal will not further the purposes underlying the two year limitations period prescribed by N.J.S.A. 2A:14-2. Rather, such an examination leads to the conclusion that Ms. Tevis' cause of action should be deemed to have accrued on December 17, 1974  the date on which this Court decided Small v. Rockfeld, 66 N.J. 231 (1974).

II
Ms. Tevis' injuries were inflicted on May 14, 1973. She did not immediately file suit against her husband for the simple and quite understandable reason that any such suit would have been dismissed pursuant to the doctrine of interspousal immunity. On December 17, 1974, however, this Court handed down its decision in Small v. Rockfeld, supra, thereby sounding the death knell of this archaic common law immunity. Upon becoming aware of our decision, Ms. Tevis filed suit. This suit was commenced well within two years of the Small decision. Her course of conduct therefore demonstrates that she was not remiss in diligently asserting her rights. She instituted a claim for redress as soon as she had a right to receive such redress.
The proofs adduced at trial show unmistakably that Ms. Tevis' claim for relief was neither frivolous nor vexatious. Nor were the triers of fact compelled to render a decision predicated upon "stale" evidence, inasmuch as suit was commenced *440 a mere six weeks after the limitations period would ordinarily have expired.
Finally, in view of the limited time period between injury and suit, defendant cannot reasonably complain that his defense has been prejudiced by delay. Indeed, defendant has not alleged during any stage of the present proceedings that delay has in fact hindered his ability to respond to Ms. Tevis' complaint.
Thus, dismissal of this particular suit will not further any of the goals underlying N.J.S.A. 2A:14-2. Indeed, dismissal will not serve any salutary purpose whatsoever.[1] Instead, such a disposition of the present suit will merely act to undermine the basic policy upon which our tort law is predicated.
At the very root of our system of civil laws is the notion that justice should be achieved and wrongs redressed. This impulse applies with special force in the tort area where "* * * over the centuries the common law * * * has developed a set of rules to implement the principle that a person should be compensated fairly for injuries caused by the violation of his legal rights." Carey v. Piphus, 435 U.S. 247, 257, 98 S.Ct. 1042, 1049, 55 L.Ed.2d 252, 261 (1978); see, e.g., Merenoff v. Merenoff, 76 N.J. 535, 547 (1978); Anderson v. Somberg, 67 N.J. 291 (1975), cert. den. 423 U.S. 929, 98 S.Ct. 279, 46 L.Ed. 2d 258 (1975); Henningsen v. Bloomfield Motors, Inc., 32 N.J. 358 (1960).
The majority today simply ignores this principle. Instead, it chooses to give effect to a common law immunity which originated in 16th century England and is predicated upon *441 the legal fiction of spousal unity. See, e.g., Merenoff, supra, 76 N.J. at 539; Small v. Rockfeld, supra, 66 N.J. at 238; Immer v. Risko, 56 N.J. 482, 484-485 (1970).
This is not a case in which an immunity prospectively abolished by this Court actually did further some rational goal at the time that the events in controversy transpired. The concept of juridical unity of husband and wife was outmoded when Ms. Tevis was beaten, it was outmoded when she filed suit, and it remains outmoded today. Indeed, any goals that might once have been served by the fictitious concept were effectively dissipated by the enactment of the "Married Women's Acts" in the mid-nineteenth century. See N.J.S.A. 37:2-1 et seq. This is the precise reason that we abolished the immunity. See Merenoff, supra, 76 N.J. at 540; Small v. Rockfeld, supra, 66 N.J. at 238; Immer v. Risko, supra, 56 N.J. at 485.
Nevertheless, the majority today chooses to exalt this functionally useless immunity at the expense of the principle of fair compensation which is deeply embedded in our tort law. It does so by mechanically applying the literal language of a statute of limitations none of whose purposes will be served by barring this particular dispute. The majority in effect rules that, in this case, principles of equity should play no part in the judicial process.
I dissent.
HUGHES, C.J., dissenting:
I would affirm the judgment below substantially for the reasons expressed in the opinion of the Appellate Division, reported at 155 N.J. Super. 273.
SULLIVAN, J., concurring in the result.
For reversal and remandment  Justices MOUNTAIN, SULLIVAN, CLIFFORD and HANDLER  4.
For affirmance  Chief Justice HUGHES and Justice PASHMAN  2.
NOTES
[1] The majority claims to be concerned with protecting the courts from a flood of old and stale claims. Its fear in that regard is unfounded. Two years have already elapsed since Small v. Rockfeld was decided. Thus, only claims already pending would be cognizable. Second, the application of equitable principles to each particular case will ensure that only those cases will be heard where the evidence is fresh and prejudice is lacking.