**NOT FOR PUBLICATION WITHOUT THE**
**APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-5261-16T4

BETSY M. ARAUCO,

    Plaintiff-Respondent,

v.

SANTOS A. PEREZ,

    Defendant-Appellant.

_____

Submitted July 9, 2018 – Decided July 25, 2018

Before Judges Yannotti and Haas.

On appeal from Superior Court of New Jersey, Chancery Division, Family Part, Passaic County, Docket No. FD-16-1263-16.

Santos A. Perez, appellant pro se.

Respondent has not filed a brief.

PER CURIAM

Defendant appeals from an order entered by the Family Part on April 27, 2016, which dismissed his claim for unjust enrichment for lack of jurisdiction. We reverse and remand the matter for further proceedings in the Family Part.

Plaintiff and defendant met in April 2001, and in October 2001, they began to live together. In 2003, the parties had a child, A.P. Plaintiff also had another child from a prior relationship. In April 2015, the parties apparently separated. Thereafter, plaintiff commenced this action in the Family Part and filed a pro se motion seeking joint legal custody, residential custody, and child support for A.P. It appears that the Family Part judge scheduled oral argument on plaintiff's motions for April 27, 2016.

Two days before the scheduled hearing date, defendant filed a verified answer and certain counterclaims. Defendant sought joint legal custody of A.P., the release of the child's therapy records, visitation, reunification therapy for the child, and monetary damages for alleged parental alienation. In addition, defendant asserted a claim against plaintiff for unjust enrichment.

In his pleading, defendant alleged that he and plaintiff had a fourteen-year cohabiting relationship with plaintiff, which ended in April 2015. Defendant is an attorney. He alleged plaintiff worked in a factory and earned a little more than the minimum wage. Defendant claimed that during the period of cohabitation,

he purchased two properties with his own funds. Both are two-family homes, one in Paterson and one in Clifton.

Defendant claimed that because he had a poor credit rating, plaintiff was the record owner of the properties. He alleged the parties acquired the properties in furtherance of a joint venture. It appears that until their cohabitation relationship ended, the parties and the two children resided in one of the Clifton units.

Defendant further alleged that while he was living with plaintiff, he incurred costs of $300,000 to renovate the two properties. Defendant claimed he performed the construction work himself, with minimal assistance. Defendant alleged the two properties have an equity value of between $150,000 and $250,000, or more.

Defendant also claimed that with minimal maintenance, the properties would be profitable and income-producing for more than thirty years. He claimed the rental income from the properties would be sufficient to pay for the purchase of the properties. According to defendant, after the outstanding mortgages are paid, the properties will yield a net profit of more than a million dollars.

Defendant claimed that if the "marital" unit in the Clifton property is not rented, the current monthly income from the two properties is nearly $4000. He asserted, however, that the current

A-5261-16T4

monthly income would exceed $6000 if the "marital" unit is rented. He alleged that after the outstanding mortgages are paid, the properties would yield a net income of $1500 per month, or more than $18,000 per year.

Defendant also alleged that in approximately twenty years, when the outstanding mortgages are paid, the equity or market value of the properties will exceed $500,000, and may approach $1,000,000. He claimed that during those twenty years, the owner will receive at least $360,000 in rental income, for a total profit of more than $1,000,000.

In addition, defendant asserted a claim for his services as homemaker and full-time parent. He alleged that he paid more than half of the household expenses. He claimed he paid for plaintiff's relatively new vehicle, while he is driving a substantially older car that requires service each month.

Defendant also alleged that throughout their relationship, plaintiff claimed both children as dependents on her income tax returns and received an average tax benefit of $8000 per month, or nearly $100,000. Meanwhile, defendant claims he has incurred an $80,000 tax debt because he has not been able to claim the children as dependents on his returns. Defendant sought total damages of $1,000,000. He also sought to partition the two properties.

4 A-5261-16T4

The judge considered the parties' applications on April 27, 2016, and placed his decisions on the record. The judge stated that both parties were seeking joint legal custody of A.P. and granted that application. The judge observed that the parties had agreed that plaintiff would continue to have residential custody of A.P., at least for the present time.

The judge did not establish a visitation schedule for defendant because A.P. had indicated she did not want to see him, and the parties could not identify a person who could supervise defendant's visits. The judge ordered the parties to meet with a reunification therapist, with the cost to be shared equally. The judge also required plaintiff to provide defendant with A.P.'s therapy records.

The judge refused to entertain defendant's claim for damages resulting from the alleged intentional infliction of emotional distress due to parental alienation. The judge found that defendant had not alleged sufficient facts to meet the criteria for such a claim under Segal v. Lynch, 413 N.J. Super. 171 (App. Div. 2010).

The judge also decided that defendant's unjust enrichment claim should be dismissed without prejudice because the Family Part did not have jurisdiction to consider the claim. The judge stated that the claim should be brought in the Law Division or the General Equity Part of the Chancery Division.

In addition, the judge decided that defendant's temporary child support obligation would be determined based on the information he provided regarding his income. The judge also denied defendant's motion to transfer the case to Morris County.

The judge memorialized his decisions in an order dated April 27, 2016. Among other things, the order prohibits defendant from having parenting time until the reunification therapist issues his reports, at which time the matter will be scheduled for further review. The order also states that defendant's child support obligation is $118 per week, which defendant must pay through the probation department. The order does not expressly state that defendant's unjust enrichment claim was dismissed.

Defendant filed a motion for leave to appeal the trial court's April 27, 2016 order and for a stay pending appeal. We denied the motions. Thereafter, the Supreme Court denied defendant's motion for leave to appeal.

On June 20, 2017, another Family Part judge entered a consent order, which states that the parties would share joint legal custody of A.P., and plaintiff would have residential custody of the child. The order establishes a visitation schedule for defendant, and states that the parties must meet with the rehabilitation therapist for three additional sessions. The order provides that the parties agreed to contact the therapist if

6

further problems develop, with the understanding that they could reopen the custody issue at any time. Defendant's appeal followed.

## II.

On appeal, defendant argues that the trial court erred by dismissing his claim for unjust enrichment on jurisdictional grounds. We agree.

In Tevis v. Tevis, 79 N.J. 422, 424 (1979), the plaintiff brought a claim against her husband for injuries sustained in a physical beating that her husband administered. The Court determined that the claim should have been asserted in the prior divorce action between the parties. Id. at 433-34. The Court held the plaintiff's cause of action accrued when the plaintiff was battered because she knew at that time she had been injured and her husband caused the injuries. Id. at 432. Plaintiff did not assert her claim within the time required by the statute of limitations. Id. at 424-25.

The Court held the statute of limitations should not be tolled on equitable grounds. Id. at 433-34. The Court noted that the plaintiff previously had initiated a divorce action against the defendant, and in that action, the plaintiff did not assert any damages claims for the injuries she had suffered. Id. at 433.

The Court stated that, "A wife's civil claims for monetary compensation against her husband, and his contingent liability

therefor, would seem a relevant circumstance affecting the parties' financial status in the context of a matrimonial controversy." Id. at 433-34 (citations omitted). The Court explained:

> Since the circumstances of the marital tort and its potential for money damages were relevant in the matrimonial proceedings, the claim should not have been held in abeyance; it should, under the "single controversy" doctrine, have been presented in conjunction with that action as part of the overall dispute between the parties in order to lay at rest all their legal differences in one proceeding and avoid the prolongation and fractionalization of litigation.
>
> [Id. at 434 (citations omitted).]

In Oliver v. Ambrose, 152 N.J. 383 (1998), the Court again addressed the application of the entire controversy doctrine to a matrimonial action. In Oliver, the Court noted that Beverly Oliver and Louis Ambrose had a "tumultuous" eight-year relationship, during which time Beverly became pregnant five times. Id. at 386-88. Beverly claimed Ambrose forced her to have two abortions and caused her to suffer two miscarriages. Id. at 389.

Beverly eventually had a child with Ambrose and later married another man. Id. at 388. Ambrose filed an action in the Family Part seeking joint custody of the child, visitation, and a support determination. Ibid. In those proceedings, Beverly filed a certification in which she set forth facts concerning Ambrose's

abusive and violent behavior. Id. at 389. Her husband also filed a complaint to adopt the child. Ibid.

The parties settled the custody and adoption matters, and the court dismissed the harassment complaint. Id. at 390. Several months later, Beverly and her husband filed an action against Ambrose based on Ambrose's physical abuse. Ibid. In response, Ambrose argued that the action was barred by the entire controversy doctrine. Ibid.

The Court noted that the entire controversy doctrine applies in family matters. Id. at 394 (citing Brennan v. Orban, 145 N.J. 282, 290-91 (1996); Tevis, 79 N.J. at 434). The Court stated that the doctrine requires that "[c]laims stemming from the same core of facts should be raised in one action." Id. at 397. The Court held that the plaintiffs' tort action "involves the same core set of facts that undergirded the custody, adoption, and harassment actions." Ibid.

The Court explained that the allegations of abuse were relevant to the custody dispute because they pertained to the issues of parental fitness and the safety of the child. Id. at 398 (citing N.J.S.A. 9:2-4). Moreover, resolution of the tort claims would affect the amount of child support that should be awarded. Ibid. The Court noted that in establishing child support, the trial court must consider, among other factors, the parents'

sources of income and assets, and their respective debts and liabilities. Id. at 398 (citing N.J.S.A. 2A:34-23(a)). The Court stated that the judgment on the tort claim would obviously "have been a relevant circumstance affecting Beverly's and Ambrose's financial status." Id. at 399.

The Court also considered the fairness of applying the entire controversy doctrine. Id. at 399-402. The Court emphasized that the doctrine requires the parties to assert all claims they have against each other in one proceeding. Ibid. It is the trial court's role to determine if the claim is relevant to the custody decision. Ibid. The Court held that it was not unfair to apply the doctrine to the plaintiffs, noting that Ambrose had settled his disputes with them in the apparent belief he had conclusively resolved those matters. Id. at 402.

## III.

We are convinced that, in light of Tevis and Oliver, the entire controversy doctrine applies in this case and required defendant to assert his unjust enrichment claim in the Family Part action. Defendant's claim arises from the same core set of facts as the dispute between the parties over custody and child support. Resolution of defendant's claim will have a significant bearing on the financial status of the parties, which is a key consideration in the determination of child support. The record

10

does not indicate it would be unfair to require defendant to litigate his unjust enrichment claim in the Family Part.

We note that there is support in our case law for defendant's claim. In <u>Bayne v. Johnson</u>, 403 N.J. Super. 125, 138 (App. Div. 2008), the plaintiff had a relationship with a married man and brought suit against him seeking palimony, based on his alleged promise to support her for life. The plaintiff also sought an interest in a condominium held in the names of the defendant and his wife. <u>Ibid.</u>

In <u>Bayne</u>, we reversed the award of damages on the palimony claim because the plaintiff failed to establish a promise of lifetime support, but affirmed the award of an interest in the condominium to the plaintiff because she had contributed funds for its purchase. <u>Id.</u> at 144. We observed that it would be a "clear injustice to deprive" the plaintiff of her interest in the condominium, and it would "constitute an unjust enrichment" to the defendant and his spouse. <u>Ibid.</u>

Furthermore, in <u>Connell v. Diehl</u>, 397 N.J. Super. 477, 487 (App. Div. 2008), the plaintiff asserted a palimony claim against the defendant. The plaintiff also sought to partition the home in which the parties had resided, as well as the personal property in the home. <u>Id.</u> at 500. We noted that the "mere promise to provide

lifetime support does not extend to a claim against assets owned solely by the [promisor]." Ibid. (citation omitted).

We stated, however, that unmarried cohabiting partners are entitled to seek a partition when they have engaged in a joint venture to purchase property in which they have resided. Ibid. (citing Mitchell v. Oksienik, 380 N.J. Super. 119, 127 (App. Div. 2005)). We observed that a party to a joint venture may seek to partition the property when the joint enterprise ends. Ibid. (citing Mitchell, 380 N.J. Super. at 127).

Moreover, in Maeker v. Ross, 430 N.J. Super. 79 (App. Div. 2013), rev'd on other grounds, 219 N.J. 565 (2014), the plaintiff filed an action against the defendant, an individual with whom she lived for more than a decade. Id. at 83. The plaintiff asserted claims against the defendant based on palimony, partnership/joint venture, resulting trust, fraud, and unjust enrichment. Ibid. Among other things, the plaintiff alleged that the defendant had promised throughout their relationship to take care of her and provide lifetime support. Ibid.

We held the plaintiff's palimony claim was barred by a recent amendment to the statute of frauds and should have been dismissed. Id. at 86-89 (citing N.J.S.A. 25:1-5(h)). We also determined that the plaintiff's unjust enrichment claim should have been dismissed

12

because it was "merely [a] different version[] of [the plaintiff's] underlying palimony claim that is barred." Id. at 97.

We noted, however, that even in the absence of a claim for palimony, courts have recognized that an unmarried party could be unjustly enriched by certain contributions from the other party to the relationship. Id. at 96 (citing Bayne, 403 N.J. Super. at 144; Connell, 397 N.J. Super. at 500). We also observed that the Restatement Third of Restitution and Unjust Enrichment § 28 (2011) (the Restatement) provides that

> If two persons have formerly lived together in a relationship resembling marriage, and if one of them owns a specific asset to which the other has made substantial, uncompensated contributions in the form of property or services, the person making the contributions has a claim in restitution against the owner as necessary to prevent unjust enrichment upon the dissolution of the relationship.

[Ibid.]

As we have explained, in this case, defendant alleges the parties lived together for several years in a relationship resembling marriage. He claims he acquired the properties in Paterson and Clifton in furtherance of a joint venture with plaintiff. Defendant alleges that he purchased the properties with his own funds, but due to his poor credit history, plaintiff is the record owner of the properties. He further alleges that over the years, he has made substantial contributions in the form of

13

property and services to renovate the properties, and plaintiff has been unjustly enriched by her ownership interest in the properties and the income from the properties.

Defendant's claim regarding the properties is similar to the claims asserted in Bayne and Connell. Moreover, plaintiff argues his claim has been recognized in the Restatement, which we discussed in Maeker. We note that the Family Part considered the claims of unjust enrichment in Maeker, Bayne, and Connell. It appears that in those cases, no one argued that the Family Part did not have jurisdiction to consider the claims.

We therefore conclude that the entire controversy doctrine required defendant to assert his claim of unjust enrichment against plaintiff in the pending Family Part proceedings. We also conclude that the Family Part judge erred by determining defendant must bring his claim in either the Law Division or the General Equity Part of the Chancery Division. We remand the matter to the Family Part for further proceedings on defendant's claim.

We note that on appeal defendant has not argued that the court erred by dismissing his claim of unjust enrichment based on the parenting and homemaking services he allegedly provided to plaintiff during the cohabitation. In Maeker, we observed that a claim for homemaking services had been rejected in Carney v. Hansell, 363 N.J. Super. 111, 127 (Ch. Div. 2003), but courts have

14

recognized claims of unjust enrichment involving cohabitating parties that are independent of homemaking services. <u>Maeker</u>, 430 N.J. Super. at 96.

In any event, it appears that defendant is not pursuing a claim of unjust enrichment for homemaking and parenting services. However, if defendant is pursuing such a claim, on remand, the court should address that claim as well.

Reversed and remanded to the Family Part for further proceedings in conformity with this opinion. We do not retain jurisdiction.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-5261-16T4