155 N.J. Super. 273 (1978)
382 A.2d 697
JANINA TEVIS, PLAINTIFF-RESPONDENT,
v.
MICHAEL TEVIS, JR., DEFENDANT-APPELLANT.
Superior Court of New Jersey, Appellate Division.
Argued November 28, 1977.
Decided January 17, 1978.
*274 Before Judges CONFORD, MICHELS and PRESSLER.
Mr. Ira D. Dorian argued the cause for the appellant (Mr. Matthew Grayson, attorney).
*275 Mr. Alan Wasserman argued the cause for the respondent (Messrs. Wilentz, Goldman & Spizer, attorneys).
The opinion of the court was delivered by PRESSLER, J.A.D.
On July 7, 1975, some six weeks after the entry of their judgment of divorce, plaintiff Janina Tevis instituted this assault and battery action against defendant Michael Tevis by which she sought damages for injuries he allegedly inflicted upon her on May 14, 1973. The action was tried before a jury following the trial judge's denial of defendant's motion for summary judgment dismissing the complaint, which he claimed was barred by the two-year statute of limitations. N.J.S.A. 2A:14-2. The jury returned a verdict awarding plaintiff compensatory damages in the amount of $25,000 and punitive damages in the amount of $10,000. Defendant appeals, urging both the bar of the statute of limitations and the alleged error of the trial judge in denying him the opportunity to adduce proof of the provocation in mitigation of compensatory as well as punitive damages.
The proofs amply supported the jury's acceptance of the version of the events of the early morning of May 14, 1973, testified to by plaintiff and two of her children. It was their testimony that when plaintiff returned home after having spent the evening out, her husband brutally and mercilessly beat her, tearing off her clothes, punching her face and upper torso, banging her head against the floor, kicking her in the stomach at the site of a recent surgical wound and otherwise savagely assaulting her, as a result of which she was seriously bruised in various parts of her body, sustained a permanent lower back soft tissue injury, and required substantial dental attention. The extent of her injuries was further corroborated both by the testimony of her treating physician and by photographs of her face and body taken shortly after the event. Defendant denied having struck her at all, claiming that when plaintiff arrived at home that night they had an argument and that she *276 injured herself when she slipped and fell while trying to kick him. Her injuries, however, both according to her treating physician and as a matter of common sense, were so inconsistent with that version of the episode as to have virtually compelled the jury's finding of an intentional assault by the defendant.
The threshold question, of course, is whether the action, having been instituted some 26 months following the assault, nevertheless survived the bar of the two-year statute of limitations. The rationale relied on by the trial judge in concluding that the cause of action was then nevertheless viable was that it was tolled during the pendency of the marriage and hence did not accrue until the date of the divorce, May 22, 1975. While we reject the tolling theory, see Kennedy v. Camp, 14 N.J. 390, 396 (1954), we nevertheless agree that the action was timely commenced. Our basis for so holding derives from the history in this State of the progressive erosion of the common-law doctrine of interspousal immunity. That history effectively commenced with Long v. Landy, 35 N.J. 44 (1961), which permitted a surviving widow injured in an automobile accident caused by the negligence of her deceased husband to bring an action against his estate. The germinal contribution of that decision was the holding that N.J.S.A. 37:2-5, barring one spouse from suing another except as "heretofore," did not adopt an immutable common-law immunity but rather incorporated the common-law subject to its subsequent judicial modification. This concept of a fluid rather than a frozen common-law incorporation enabled the court then to hold that the immunity should not be permitted to be raised as a bar to an action to which none of the common-law reasons which gave rise to the immunity has any continued relevance. Those reasons were expressed as (1) the "artificial and technical theory of the legal identity of husband and wife." (2) "the disruptive effect upon the harmony of the family" and (3) "the possibility of fraudulent and collusive litigation against the frequent real party in interest  the insurance *277 carrier." 35 N.J. at 50. The irrelevance of all of these considerations following the death of the allegedly negligent spouse is an obvious proposition.
Immer v. Risko, 56 N.J. 482 (1970), relying substantially on the rationale of Long v. Landy, supra, advanced the natural and logical next step of concluding that none of the three underlying reasons for the common-law immunity justified the interposition of that bar to any action predicated on automobile negligence. Continued concern, however, over the possibility of collusive litigation in fraud of the insurance carrier and the carrier's consequent need for the opportunity of prompt investigation motivated the court in Darrow v. Hanover Township, 58 N.J. 410 (1971), to limit the abolition of interspousal immunity in automobile negligence actions to accidents occurring after the date of decision of Immer. That it was the specter of collusive litigation alone which impelled the exclusively prospective application of the Immer abolition was again underscored in Gotsch v. Gotsch, 63 N.J. 217 (1973), permitting the maintainability of an interspousal automobile negligence action based on a pre-Immer accident which also, however, predated the marriage of the litigants, a factor which obviated the carrier's pre-Immer reliance on not having to investigate.
The abolition of interspousal immunity continued to be limited to automobile negligence actions and hence, tautologically, the immunity remained available as a bar to all other interspousal tort actions until Small v. Rockfeld, 66 N.J. 231 (1974), which effectively extended the abolition to an interspousal tort based on gross negligence and intentional injury and expressly terminated the immunity in situations "unconcerned with any marital relationship privilege or simple domestic negligence." 66 N.J. at 241.[1] *278 In a civilized society, wife-beating is, self-evidently, neither a marital privilege nor an act of simple domestic negligence. Neither is any other intentional tort by which one spouse victimizes the other. Nor, moreover, do any of the common-law reasons for interspousal immunity pertain to intentional torts. The identity of the spouses is a fiction no longer acceptable on any basis. Insurance coverage for such torts not being available as a matter of public policy, see, e.g., Malanga v. Manufacturers Cas. Ins. Co., 28 N.J. 220, 225 (1955), there is no carrier who might be defrauded. Finally, if the family harmony has been disrupted, the primary cause thereof is the tort and not the quest for the remedy therefor. As cogently observed by Dean Prosser, quoted by the Court in Small v. Rockfeld, supra:
The chief reason relied upon by all these courts, however, is that personal tort actions between husband and wife would disrupt and destroy the peace and harmony of the home, which is against the policy of the law. This is on the bald theory that after a husband has beaten his wife, there is a state of peace and harmony left to be disturbed; and that if she is sufficiently injured or angry to sue him for it, she will be soothed and deterred from reprisals by denying her the legal remedy  and this even though she has left him or divorced him for that very ground, and although the same courts refuse to find any disruption of domestic tranquility if she sues him for a tort to her property, or brings a criminal prosecution against him. If this reasoning appeals to the reader, let him by all means adopt it. Prosser, § 122 at 863 [66 N.J. at 238]
Thus we are satisfied that the bar of interspousal immunity to this assault action was lifted and the action maintainable  but not until the date Small v. Rockfeld was decided, namely, December 17, 1974. That date was less than two years after the commission of the tort here and less than two years, indeed only seven months, prior to the filing of the complaint. We are further satisfied that under these circumstances December 17, 1974 is the date upon which this action accrued. It is, of course, clear that an action cannot be deemed to have accrued until the right to institute and maintain the suit arises. See, e.g., Rosenau *279 v. New Brunswick and Gamon Meter Co., 51 N.J. 130, 137 (1968). It has also been held that a viable status-immunity defense, although in some respects an affirmative defense directly affecting the remedy rather than the right, is nevertheless one which is so elemental to the maintainability of the action that its existence will defeat the action even if not properly pleaded. See, e.g., Faul v. Dennis, 118 N.J. Super. 338, 343-344 (Law Div. 1972). And see the discussion generally of the class of defenses affecting the maintainability of actions in Montag v. Bergen Bluestone Co., 145 N.J. Super. 140, 148-149 (Law Div. 1976). Had this action been commenced prior to December 17, 1974, it would, as a matter of reasonable expectation, have been subject to prompt dismissal because of the marital relationship of the parties. Thus, in our view, the tort could not have been regarded as actionable and by definition the cause did not accrue until Small v. Rockfeld accorded a right of action to the victim of an intentional interspousal tort. We note, further, that the right to maintain this action did accrue within 19 months following the injury. There is nothing in this record to suggest that this defendant in any way suffered any peculiar or unusual prejudice by the two-month lapse of time between the expiration of two years following the assault and the date thereafter when suit was actually commenced. See Fox v. Passaic General Hospital, 71 N.J. 122 (1976). Finally, we see no reason why Small v. Rockfeld should be limited to prospective application, as was Immer v. Risko, supra. As we have pointed out, that prospective application was based solely on considerations of fairness to insurance carriers, considerations of no relevance at all to a tort for whose consequence insurance coverage is in any event unavailable.
Having concluded that the statute of limitations issue was correctly decided against defendant, we consider his contention that the trial judge erred in excluding evidence regarding his provocation for the assault, specifically his alleged observation of his wife's marital misconduct in *280 the automobile which brought her home on the night in question. We are satisfied that provocation for an assault is not a proper factor in mitigation of compensatory damages although it is a factor which bears directly on punitive damages. That is the long-standing rule in this state. See Osler v. Walton, 67 N.J.L. 63, 65 (Sup. Ct. 1901), as well as the rule accepted by the majority of our sister states. See Prosser on Torts (4 ed. 1971), supra, § 19 at 110, noting that "the prevailing view, with some little authority to the contrary, is that [provocation for assault] operates only to reduce or avoid punitive, as distinguished from compensatory, damages." See, also, cases collected in Annotation, "Provocation as Mitigation of Compensatory Damages in Actions for Assault," 63 A.L.R. 886 (1929), and supplementary case service thereto. We are unpersuaded by defendant's assertion of the preferability of the minority view, which would permit compensatory damages as well as punitive damages to be subject to mitigation by reason of provocation.[2] If simple negligence, innocent and unintended from the outset, will result in liability for full compensatory damages, we fail to see why an actionable intentional infliction of injury should not.
Defendant was, however, clearly entitled to offer proof of provocation in mitigation of punitive damages. It is true that his primary defense was not a provoked assault, but rather no assault at all. The jury could nevertheless have accepted the plaintiff's theory of the case and disbelieved defendant's exculpatory version as it did, but still have concluded *281 that the denied attack was provoked by the plaintiff's own conduct. As the erroneous exclusion of the provocation evidence had no relation at all to the compensatory damages verdict, that verdict will stand. We remand, however, for a new trial on punitive damages alone.
Affirmed as to compensatory damages. Reversed and remanded as to punitive damages.
NOTES
[1] Illustrative of simple domestic negligence in respect of which the immunity might have been intended to have been retained is Patterson v. Patterson, 129 N.J. Super. 524 (Law Div. 1974), in which a wife allegedly sustained injuries as a result of her husband's negligence in handling back-yard barbecue equipment.
[2] The minority view has been followed by Texas, Tennessee, Iowa and Massachusetts, the last two in the vintage cases, respectively, of Jackson v. Old Colony St. R. Co., 206 Mass. 477, 92 N.E. 725 (Sup. Jud. Ct. 1910), and Bascom v. Hoffman, 199 Iowa 941, 203 N.W. 273 (Sup. Ct. 1925), and the first two, more recently, but not by the court of last resort, in Mohler v. Owens, 352 S.W.2d 855 (Tex. Civ. App. 1962) and Arnold v. Wiley, 39 Tenn. App. 391, 284 S.W.2d 296 (Ct. App. 1955).