743 A.2d 853 (2000)
327 N.J.Super. 394
CUMBERLAND MUTUAL FIRE INSURANCE COMPANY, Plaintiff-Respondent,
v.
Thomas M. BEEBY and Nancy Styer, Defendants-Appellants.
Superior Court of New Jersey, Appellate Division.
Argued October 14, 1999.
Decided January 18, 2000.
*854 Joseph C. Grassi, Wildwood, for defendants-appellants (Rossi, Barry, Corrado, Grassi & Radell, attorneys; Mr. Grassi, on the brief).
Frank G. Basile, Vineland, for plaintiff-respondent (Basile & Testa, attorneys; Diane Giordano, Pennsauken, on the brief).
Before Judges KING, CARCHMAN and LEFELT.
The opinion of the court was delivered by CARCHMAN, J.A.D.
This insurance coverage appeal requires us to address the scope of our decision in Merrimack Mutual Fire Insurance Co. v. Coppola, 299 N.J.Super. 219, 690 A.2d 1059 (App.Div.1997), and its applicability where a defendant suggests that his objectively assaultive conduct was not intended to cause injury but was intended to protect a plaintiff from potential harm. We conclude that a genuine issue of material fact exists which precludes a determination, as a matter of law, that defendant Thomas Beeby is not entitled to coverage under his homeowner's policy with plaintiff Cumberland Mutual Fire Insurance Co. (Cumberland). We hold that where a factual inquiry is necessary to determine coverage, that issue should be resolved in a plenary proceeding prior to resolution of the underlying tort action. We remand this matter to the Law Division for a plenary hearing to resolve the factual dispute and determine whether such coverage is excluded under the terms of the policy.
The issue we have identified arises in the following factual and procedural context. Nancy Styer (Styer) and defendant were involved in a long-standing relationship. They lived together since 1993 and parented a child. Defendant is a detective with the Lower Township Police Department.
On January 28, 1994, Styer, defendant and a friend, Danette Hickman (Hickman), went out socially for "happy hour" at a bar in Wildwood. After a few hours they proceeded to a bar in North Cape May, the Red Bull, arriving there at about 10 p.m. At about 11 p.m. Styer and defendant had a verbal disagreement over Styer's smoking. Styer then left the Red Bull without indicating where she was going. When Styer did not return, defendant became concerned and, with Hickman, went to look for her. Defendant later estimated that Styer had consumed between ten and eleven beers and one or two shots of "Red Devil." Defendant acknowledged that he drank eight or nine beers during the course of the evening but denied feeling the effects of the alcohol.
Defendant and Hickman first looked for Styer in the Red Bull parking lot. They proceeded to canvass the area and finally drove to the home of their mutual friends, Joe and Margaret Vitelli, thinking she may have gone there. When they arrived at the Vitelli's, Margaret Vitelli (Margaret) informed defendant that Styer was at the Dunkin' Donuts on Town Bank Road and Bayshore Road. Margaret wanted to pick up Styer. Defendant insisted that he pick her up.
Defendant and Hickman then drove to the Dunkin' Donuts where they saw Styer standing near a phone booth. As defendant walked to Styer, he told her to get into the car; she refused and started walking toward the street. Defendant claims that when Styer attempted to cross Town Bank Road and Bayshore Road, he reached out to grab her: "I wound up grabbing her hair, and I thought I grabbed part of the back of her coat ... I thought I only initially grabbed [her hair] till I was able to pick her up."
As defendant grabbed Styer and tried to pick her up and put her in the car, she struggled to get free. As she did, she struck her knee causing her injury. Defendant asserts that he did not intend to harm her, but because of her "condition," he was concerned about her crossing a *855 roadway. He simply wanted them to go home.
After defendant put Styer in the passenger seat of the car, Styer left the car and started to run through the Dunkin' Donuts parking lot with Hickman. The two ran to the back of a parking lot where they jumped over a four-foot fence. Defendant saw Margaret pull into the parking lot, and he proceeded to go home. Defendant claims that when he left the area, he did not know that Styer had suffered any injury. Defendant and Styer appeared in Middle Township Municipal Court on the Wednesday following the incident. Although the record is unclear as to the nature of the charge and whether a domestic violence complaint was filed, the matter was ultimately dismissed without an adjudication on the merits.
On January 16, 1996, Styer filed a two-count complaint in the Law Division against defendant for personal injuries she sustained as a result of the incident that occurred on January 28, 1994 (the tort action). In the first count, she alleged assault, battery, false arrest and false imprisonment; in the second count, she alleged that defendant's negligence caused her injuries.
When the claim was filed against defendant, he maintained a homeowner's insurance policy with Cumberland. The policy provided in pertinent part:
4. ENDANGERMENT OR HARM

We do not cover bodily injury or property damage, whether or not expected or intended by the insured, which is a consequence of an insured's wilful harm or knowing endangerment.
On April 17, 1996, Cumberland filed a separate declaratory judgment action against defendant and Styer seeking a declaration that Cumberland had no duty to defend and indemnify defendant under his homeowner's policy for the acts complained of in Styer's complaint.
Defendant moved for summary judgment against Cumberland seeking to require Cumberland to defend him in the underlying tort action. Cumberland filed a cross-motion for summary judgment seeking an adjudication that it had no duty to defend under the policy. The motion judge ordered Cumberland to defend "subject to reservation and full right to reserve a judgment in the amount of its defense costs if the jury determines no coverage."
Cumberland moved before us for leave to appeal. We granted leave to appeal and summarily reversed, stating:
The motion for leave to appeal is granted and the order of April 4, 1997 is summarily reversed. R. 2:8-3(b); R. 2:11-2. We direct that the Law Division judge conduct a trial of the issue of insurance coverage prior to the trial on the issue of liability and damages. After a determination is made whether or not the Cumberland Mutual policy provides coverage for the claim by Nancy Styer against Thomas Beeby, the trial of the tort claim may then proceed. Burd v. Sussex Mutual Ins. Co., 56 N.J. 383, 391, 267 A.2d 7 (1970).
Cumberland renewed its motion for summary judgment in the Law Division, and the motion judge, relying on our decision in Merrimack, granted Cumberland's motion. The judge stated:
[M]y feeling is and my reading of the Merrimack case is such as to warrant I believe the granting of summary judgment in favor of the plaintiff in this case and say that there is no coverage and therefore no duty to defend by virtue of the nature of the relationship, the parties involved, and the acts which are precluded by the legislature and the Domestic Violence Acts as well as the cases that I have cited and in particular the Merrimack case.
... while there is a distinction attempted to be made between the Merrimack case and the present case by virtue of the allegations of the complaint, that's not so. The fourth count of the complaint in the Merrimack case alleged in *856 the alternative that defendant negligently physically and emotionally abused Joanne Coppola throughout the course of the parties' marriage, so there was a negligence claim in that Coppola case as well and that's what the Court was directing itself to in its analysis which.... I think it's fully applicable here although it's not a spousal abuse kind of thing because there's no marriage, but all the other indications or indicia of a marriage were there and I just don't see any way around it. I further say that I believe that ultimately ... the charge to the jury would include much of what I've just said. The jury would decide not only whether ... this is the kind of case that is so reprehensible. I think ... I would have asked them whether or not the act itself, the fact that it is a violation of domestic violence might be ... by them to be reprehensible such that they would not have to go through the analysis of objective/subjective kind of thing, but I don't know if I would have done that.
This appeal followed.
On appeal, defendant asserts that the trial judge: a) violated our mandate ordering a "trial on the issue of insurance coverage" by granting Cumberland's renewed motion for summary judgment; b) violated the doctrine of "the law of the case"; and c) erred in relying on our decision in Merrimack as dispositive of the issues here. Because we determine that the facts preclude application of Merrimack and that a plenary hearing is required to determine the disputed questions of fact, we need not address the first two issues. We limit our analysis to the application of Merrimack, and the procedure on remand.
We first identify certain basic principles which apply to the common circumstance of a plaintiff pleading both an intentional act of assault and thereafter pleading a negligent act both causing the same injury.
An insurer has a duty to defend its insured "`when the complaint states a claim constituting a risk insured against.'" Voorhees v. Preferred Mut. Ins. Co., 128 N.J. 165, 173, 607 A.2d 1255 (1992) (quoting Danek v. Hommer, 28 N.J.Super. 68, 77, 100 A.2d 198 (App.Div.1953), aff'd o.b., 15 N.J. 573, 105 A.2d 677 (1954)). "Whether an insurer has a duty to defend is determined by comparing the allegations in the complaint with the language of the policy. When the two correspond, the duty to defend arises, irrespective of the claim's actual merit." Ibid. Here, the policy afforded coverage for "bodily injury... which occurs during the policy term and is caused by an occurrence covered here." An occurrence is defined in the policy as "an accident which results ... in bodily injury." However, the policy excludes from coverage "bodily injury ... whether or not expected or intended by the insured, which is a consequence of an insured's wilful harm or knowing endangerment." As we have noted, plaintiff has pled two distinct causes of action, one is covered by the policy and the other is excluded. In its argument, Cumberland asserts that the policy excludes coverage regardless of the insured's intent claiming that it is not necessary to delve into subjective intent because the exclusionary language, on its face, clearly and specifically takes the expectation and intention of the insured out of the calculus. Cumberland argues that, objectively, defendant's intentional conduct of pulling hair and pulling, dragging or carrying Styer constitutes "wilful harm" or "knowing endangerment."
The trial judge concluded that our opinion in Merrimack controlled and excluded coverage, rendering any factual inquiry into the nature and quality of defendant's acts unnecessary. In Merrimack, we specifically addressed the issue as to "whether a defendant husband's subjective intent with respect to the consequences of his alleged abusive behavior toward his wife [was] relevant in determining if coverage exist[ed] under his homeowner's policy that exclude[d] indemnity for injuries expected or intended." Merrimack, supra, 299 N.J.Super. at 221, 690 A.2d 1059. The *857 wife alleged at the divorce trial "a litany of physical and emotionally abusive behavior" continuing for a period of twenty-five years and necessitating at least two restraining orders, the last order being entered in 1990, which granted in-house restraints and forbid harassing and violent activities between defendant husband and his wife. Defendant admitted that the conduct described by his wife amounted to domestic abuse. We noted:
It is clear from the recitation of the proofs offered by Jo Ann in the divorce trial that she was asserting acts of intentional misconduct, as opposed to negligence, as grounds for her Tevis [v. Tevis, 79 N.J. 422, 400 A.2d 1189 (1979) ] claim.
We found that "spousal abuse is so reprehensible that both public policy and logic require a presumption that the actor intended injury." Merrimack, 299 N.J.Super. at 229, 690 A.2d 1059; cf. Miller v. McClure, 326 N.J.Super. 558, 569, 742 A.2d 564 (App.Div.1998) (concluding that allegations of workplace sexual harassment were so egregious and reprehensible as to preclude coverage under the policy), aff'd o.b. ___ N.J. ___, ___ A.2d ___, 1999 WL 1241071 (1999). In finding that insurance coverage for intentional acts of domestic violence was not available to defendant, "we conclude[d] that spousal abuse in any form is `so inherently injurious, that it can never be an accident,' and therefore, `[a]s a matter of public policy and logic ... the better rule warrants application of the objective approach,' to the end that the intent to injure is presumed from the performance of the act." Id. at 230, 690 A.2d 1059 (quoting Voorhees, supra, 128 N.J. at 165, 607 A.2d 1255).
Merrimack is distinguishable from the case before us. The record is devoid of any prior history of domestic violence or abusea critical finding in Merrimack. There is no record of any prior restraining orders, and Styer's claims arose as a result of an isolated incident premised, according to defendant, on his asserted concern for her safety that occurred during the course of one evening. This is markedly different from the sustained evidence of spousal abuse that was before the court in Merrimack.
Notwithstanding the significant policy considerations underlying Merrimack, consideration from which we suggest no retreat, the basic principles of summary judgment still apply. Included among these principles is the requirement that the defender of the motion is entitled to all favorable inferences. Brill v. Guardian Life Ins. Co. of Am., 142 N.J. 520, 523, 666 A.2d 146 (1995). Among the favorable inferences in this case is that defendant's action was protective rather than assaultive. Thus, before a motion judge applies Merrimack and precludes consideration of intent, the judge must make the threshold determination of whether defendant's conduct falls within the realm of conduct warranting application of such a policy. Considering all inferences in favor of defendant, defendant's actions, however misguided, were focused on preventing Styer from walking into the middle of the street. A trier of fact could conclude that defendant was acting to protect Styer and did not intentionally assault her, but in his protective zeal, negligently caused the injury giving rise to the cause of action. In other words, a trier of fact could find that defendant's "intentional" touching of Styer did not rise to the level of an assault and act of domestic violence. We need not express our views as to whether defendant will convince a trier of fact of the bona fides of his theory, only that, on the facts presented here, he have the opportunity to do so. Resolution of this issue will decide the issue of coverage.
We add an additional observation regarding the language used in the policy. A precise definition of "wilful harm" has proven to be elusive. McLaughlin v. Richland Shoe Co., 486 U.S. 128, 133, 108 S.Ct. 1677, 1681, 100 L.Ed.2d 115, 123 (1988) (noting that "[t]he word "wilful" is *858 widely used in the law," but "has not by any means been given a perfectly consistent interpretation"). New Jersey courts have ascribed various meanings to the elements of this presumably simple phrase. See, e.g., G.S. v. Department of Human Servs., 157 N.J. 161, 178-79, 723 A.2d 612 (1999) (stating in the context of child neglect that "wilful and wanton misconduct implies that a person has acted with reckless disregard for the safety of others"); Fielder v. Stonack, 141 N.J. 101, 124-26, 661 A.2d 231 (1995) (defining "wilful misconduct" in the context of a police pursuit as "the knowing failure to follow specific orders, `knowing' that there is an order and wilfully failing to follow it, i.e., intentionally failing to obey an order"); Foldi v. Jeffries, 93 N.J. 533, 549-50, 461 A.2d 1145 (1983) (stating in the context of parental liability for wilful or wanton negligent supervision of children that "[t]he standard is ... an accepted intermediary position between simple negligence and the intentional infliction of harm"); Executive Comm'n on Ethical Standards v. Salmon, 295 N.J.Super. 86, 105-07, 684 A.2d 930 (App.Div.1996) (defining wilful in the context of ethics violations as "intentional and deliberate, with knowledge of its wrongfulness, and not merely negligent, heedless, or unintentional"). However, we need not explore the limits of defining "wilful harm or knowing endangerment" because the narrow issue presented here is whether defendant's conduct, once judicially reviewed, rises to the level of being an act of domestic violence. We hold that whatever definition of wilful harm or knowing endangerment is applied, if there is a finding of domestic violence, the holding of Merrimack and the exclusionary provision of the policy will be satisfied. To find otherwise would reinstate the concept of intent in a domestic violence context, a position that we have previously rejected in both Merrimack and Tevis v. Tevis, 155 N.J.Super. 273, 382 A.2d 697 (App.Div.1978), rev'd on other grounds, 79 N.J. 422, 400 A.2d 1189 (1979).
We finally address the issue of the procedure to be followed on remand. We previously ordered that a trial be conducted on the issue of insurance coverage prior to the trial on the issue of liability and damages. The motion judge again granted summary judgment. Since we have found that there is an issue of fact, the matter shall be resolved through a plenary hearing with a trier of fact adjudicating the true nature of defendant's actions and whether he is entitled to coverage. After that determination is made, the tort action may then proceed to final resolution. This procedure will eliminate the anomaly of a potential abuser being covered for acts which amount to spousal abuse. As we observed in Merrimack:
Clearly, coverage for spousal abuse, in any form, would encourage those who are disposed to commit such reprehensible acts to inflict injury upon their spouses with impunity, knowing that their insurance companies will indemnify them for the money damages recovered by their spouses if only they can convince some jury that they did not intend or expect bodily harm to flow from their conduct. Therefore, we conclude that spousal abuse in any form is "so inherently injurious, that it can never be an accident," and therefore, "[a]s a matter of public policy and logic ... the better rule warrants application of the objective approach," to the end that the intent to injure is presumed from the performance of the act. Voorhees, supra, 128 N.J. at 185, 607 A.2d 1255 (quoting Atlantic Employers, supra, 239 N.J.Super. at 283, 571 A.2d 300).
[Merrimack, supra, 299 N.J.Super. at 230, 690 A.2d 1059.]
Our decision does not retreat from this view but simply requires that the trier of fact, for coverage purposes, determine whether the acts complained of fall within the exclusion under the policy. That finding, in essence, requires a determination of whether defendant committed an act of domestic violence, a determination which *859 will test the quality of his acts as well as the intended result. Id. at 231, 690 A.2d 1059.
We reverse the judgment in favor of Cumberland and remand for a plenary hearing consistent with this opinion. We do not retain jurisdiction.