769 A.2d 1085

JANA BITTNER, THOMAS BITTNER, AND THOMAS R. BITTNER, JR., PLAINTIFFS–APPELLANTS, v. HARLEYSVILLE INSURANCE COMPANY/COMPANIES, DEFENDANT–RESPONDENT.

Superior Court of New Jersey
Appellate Division

Argued February 20, 2001—Decided March 29, 2001.

448

Before Judges WEFING, CUFF [1] and LISA.

*Lee H. Engelman,* argued the cause for appellant.

*Robert A. Hicken,* argued the cause for respondent (*Capehart & Scatchard,* attorneys; *Mr. Hicken,* of counsel; *Alison M. Nissen,* on the brief).

The opinion of the court was delivered by

LISA, J.A.D.

Plaintiffs appeal from a summary judgment dismissing their declaratory judgment action in which they sought homeowner's insurance coverage for injuries caused by plaintiff, Thomas R. Bittner, Jr. ("Bittner"), son of plaintiffs Jana Bittner and Thomas Bittner, in a domestic violence incident. The victim sought monetary damages against Bittner in a proceeding brought in the Family Part under the Prevention of Domestic Violence Act of 1991 ("PDVA" or "Act"). *N.J.S.A.* 2C:25–17 to –35. Bittner contends that his conduct was reckless, not intentional, and therefore he should not be excluded from coverage. We disagree and affirm.

The underlying incident occurred at 12:30 a.m. on May 21, 1996, in the parking lot of a bar. Bittner and his then-girlfriend, Heather Ewan ["Ewan"], were engaged in an argument. According to Ewan, Bittner punched her in the face. She signed a complaint under the PDVA alleging that Bittner committed an act of assault, endangering her life, health or well-being, by "striking [Ewan] in face with his fist and keys causing extensive facial and dental damage." The complaint further alleged that there had been a previous act of domestic violence wherein Bittner "struck [Ewan] on head with phone." A temporary restraining order was immediately issued.

---

[1] Judge Cuff did not participate in oral argument. However, with the consent of counsel she has joined in this opinion. *R.* 2:13–2(b).

On the date of the incident, the police issued a criminal complaint charging Bittner with second-degree aggravated assault, *N.J.S.A.* 2C:12–1b(1), for causing serious bodily injury "by punching the victim in the face while holding a set of keys in that hand." Bittner immediately signed a cross-complaint against Ewan, charging her with simple assault for attempting to cause bodily injury to him by punching him in the face, in violation of *N.J.S.A.* 2C:12–1a(1). On August 27, 1996, Bittner was indicted for second-degree aggravated assault. On December 1, 1997, pursuant to a plea agreement, he pled guilty to a downgraded charge of simple assault, *N.J.S.A.* 2C:12–1a(1). When entering his plea, Bittner admitted to only reckless conduct,[2] stating that when he put his hand up to fend off Ewan, his keys flew out of his hand and hit her in the face. The plea was entered with a reservation that it could not be used against Bittner in a civil proceeding. *R.* 3:9–2.

On January 30, 1998, Bittner was sentenced, in accordance with the recommendation in the plea agreement, to one year of probation, a $250 fine, mandatory penalties, twenty-five hours of community service work and restitution to Ewan for unreimbursed medical and dental expenses of $2,034. A special condition of the probation was that Bittner abide by the existing restraining order under the PDVA. At sentencing, his cross-complaint against Ewan for simple assault was dismissed, in accordance with the plea agreement.

In the ongoing domestic violence action in the Family Part, Ewan sought various forms of relief, including compensatory and punitive damages, as allowed by *N.J.S.A.* 2C:25–29b(4). That provision of the Act allows for monetary compensation to victims "for losses suffered as a direct result of the act of domestic violence," including out-of-pocket losses for injuries sustained,

---

[2] *N.J.S.A.* 2C:12–1a(1) defines simple assault as: "A person is guilty of assault if he [a]ttempts to cause or purposely, knowingly or recklessly causes bodily injury to another...."

compensation for pain and suffering, and, where appropriate, punitive damages.

After the plea was entered, Bittner's attorney notified defendant, which had issued a homeowner's policy to Bittner's parents, of his intention to seek coverage under that policy for the injuries that Bittner caused to Ewan. He contended defendant was obligated to provide a defense to Bittner in the ongoing domestic violence proceeding and indemnify Bittner for his counsel fees and any sums for which he might be held liable. Defendant denied coverage under the "intentional act" exclusion in the policy.[3] Plaintiffs then filed this declaratory judgment action on May 21, 1998. Judge Sypek granted defendant's summary judgment motion on November 5, 1999 and denied plaintiffs' motion for reconsideration on January 21, 2000.

In the domestic violence proceeding, Ewan steadfastly adhered to her contention that Bittner's conduct was intentional, testifying that he "punched me in the face with a set of keys." She said that the force of the blow knocked her to the ground, after which she observed Bittner holding the keys in his clenched hand. She further testified that after she got up, she began to strike him. Bittner testified to his version, which was consistent with the factual basis in support of his plea.[4] Ewan has never filed a civil

---

[3] Defendant has never disputed that its policy was in effect on May 21, 1996, and that Bittner was an insured.

[4] Since the filing of this appeal, the domestic violence action has been concluded. We have been furnished with a transcript of the Family Part proceedings of February 5, 2001 and the orders that were entered on that date. The judge who had conducted several days of trial was no longer available due to disability. The newly-assigned judge stated that she had read all of the transcripts. Both parties were present and represented by counsel. They placed on the record the settlement they reached on the damage claim, namely $7,500 for pain and suffering. Apparently Bittner had previously paid all unreimbursed medical and dental expenses, presumably pursuant to the restitution order in the criminal case. Bittner admitted under oath that he committed an act of domestic violence, providing as a factual basis that the keys recklessly flew out of his hand, hitting and injuring Ewan. Bittner acknowledged his understanding

action against Bittner. She has never alleged any alternative basis for liability, such as negligent or reckless infliction of bodily injury.

An insurer's duty to defend "is determined by comparing the allegations in the complaint with the language of the policy. When the two correspond, the duty to defend arises, irrespective of the claim's actual merits." *Voorhees v. Preferred Mut. Ins. Co.*, 128 *N.J.* 165, 173, 607 *A.*2d 1255 (1992). Defendant's policy requires it to defend and indemnify "[i]f a claim is made or a suit is brought against an insured" for damages because of "bodily injury" caused by an "occurrence" covered by the policy. "Occurrence" is defined as an accident. The policy excludes coverage for conduct causing bodily injury "which is expected or intended by the 'insured.'" Since no claim has ever been made nor any suit been brought for anything other than Bittner's alleged intentional conduct, defendant's duty to defend was not triggered.

Bittner argues that the allegation in the domestic violence complaint alternatively encompasses an allegation of reckless conduct. The PDVA incorporates by reference various criminal statutes, the violation of which may constitute an act of domestic violence if committed against a person protected by the Act. *N.J.S.A.* 2C:25–19a; *Corrente v. Corrente*, 281 *N.J.Super.* 243, 248, 657 *A.*2d 440 (App.Div.1995). The criminal statute alleged to have been violated in this domestic violence complaint is assault, *N.J.S.A.* 2C:12–1, which can, by definition, be committed by

that by admitting to the commission of an act of domestic violence he was giving up his right to have the judge decide the issue based on the trial testimony and that a final restraining order ("FRO") would be issued. The judge accepted his admission as voluntary and his factual basis as sufficient and determined that Bittner did commit an act of domestic violence. The judge therefore entered an FRO prohibiting Bittner from engaging in future acts of domestic violence, from communicating with Ewan, from going to her residence or place of employment, from making any harassing communications to Ewan, from possessing any firearms and from stalking Ewan. A companion order (referenced in the FRO) directed payment of the $7,500, on terms there specified.

purposeful, knowing or reckless conduct.[5]  Bittner argues that this circumstance, coupled with his contention that his conduct was only reckless, avoids the intentional act exclusion and brings the claim against him within the scope of coverage.  This argument is flawed for two reasons.

Although it is possible for an assault to be committed by reckless conduct, Ewan's claim is predicated solely on an allegation of intentional conduct.  That Bittner, pursuant to a plea agreement, pled guilty in the collateral criminal proceeding by admitting only to reckless conduct does not alter the gravamen of Ewan's domestic violence complaint against him;  nor does the fact that he asserts mere reckless conduct in the domestic violence proceeding in an effort to mitigate the degree of his culpability.

Moreover, strong public policy considerations militate against allowing insurance coverage in proceedings under the PDVA. The structure of the Act defines proscribed conduct by reference to criminal statutes, *N.J.S.A.* 2C:25–19a, notwithstanding that proof is by a preponderance of the evidence standard, *N.J.S.A.* 2C:25–29a.  Its enactment was based, in part, on the Legislature's finding "that domestic violence is a serious crime against society" and the Legislature's intent "to assure the victims of domestic violence the maximum protection from abuse the law can provide." *N.J.S.A.* 2C:25–18.

Prior to enactment of the PDVA, this court recognized that "[i]n a civilized society, wife-beating is, self-evidently, neither a marital privilege nor an act of simple domestic negligence.  Neither is any other intentional tort by which one spouse victimizes the other." *Tevis v. Tevis,* 155 *N.J.Super.* 273, 278, 382 *A.*2d 697 (App.Div. 1978), *rev'd* on other grounds 79 *N.J.* 422, 400 *A.*2d 1189 (1979). The court noted that insurance coverage is not available for such

---

[5] *N.J.S.A.* 2C:25–19a(2) incorporates by reference all forms of assault under *N.J.S.A.* 2C:12–1.  Some forms of simple and aggravated assault may be committed by reckless, as well as purposeful or knowing conduct.  Indeed, one form of simple assault can be committed by negligently causing bodily injury to another with a deadly weapon.  *N.J.S.A.* 2C:12–1a(2).

torts as a matter of public policy. *Ibid.* Further, our Supreme Court has acknowledged that domestic violence is a national epidemic and that New Jersey has been in the forefront in seeking to curb it, with the PDVA providing the most comprehensive protection for abuse victims, including authorization for payment of punitive damages and compensation for pain and suffering. *Brennan v. Orban*, 145 *N.J.* 282, 299–300, 678 *A.*2d 667 (1996).

Relief may be granted under the Act, including an order for payment of damages, "only after a finding or an admission is made that an act of domestic violence was committed by that person." *N.J.S.A.* 2C:25–29a. "Domestic violence is a term of art which describes a pattern of abusive and controlling behavior which injures its victim." *Corrente, supra*, 281 *N.J.Super.* at 246, 657 *A.*2d 440. Accordingly, in determining whether an act of domestic violence has been committed, the court shall include in its consideration whether there has been any previous history of domestic violence between the parties, *N.J.S.A.* 2C:25–29a(1), whether any immediate danger to the victim exists, *N.J.S.A.* 2C:25–29a(2), and what is in the best interests of the victim, *N.J.S.A.* 2C:25–29a(4).

It is an oversimplification to consider that proof of the requisite elements of one of the criminal offenses referenced in the Act, in and of itself, constitutes an act of domestic violence. This court has observed:

> The Legislature, however, did not intend that:
>
> the commission of any one of these acts *automatically* would warrant the issuance of a domestic violence order. The law mandates the acts claimed by a plaintiff to be domestic violence must be evaluated in light of the previous history of domestic violence between the plaintiff and defendant including previous threats, harassment and physical abuse and in light of whether immediate danger to the person or property is present. *N.J.S.A.* 2C:25–29a(1) and (2). This requirement reflects the reality that domestic violence is ordinarily more than an isolated aberrant act and incorporates *the legislative intent to provide a vehicle to protect victims whose safety is threatened. This is the backdrop on which [a] defendant's acts must be evaluated.*
>
> [*N.B. v. T.B.*, 297 *N.J.Super.* 35, 40, 687 *A.*2d 766 (App.Div.1997) (citing *Corrente, supra*, 281 *N.J.Super.* at 248, 657 *A.*2d 440).]

*See also Cesare v. Cesare*, 154 *N.J.* 394, 713 *A.*2d 390 (1998); *Kamen v. Egan*, 322 *N.J.Super.* 222, 730 *A.*2d 873 (App.Div.1999).

Therefore, whether a domestic violence defendant asserts that his conduct satisfies only the reckless [6] mental state of a referenced offense, or if it is found to be so by the domestic violence judge, is not controlling in determining whether the conduct constitutes an act of domestic violence. Satisfaction of the elements of a referenced offense is only one of several essential considerations. The specific conduct must be viewed in a broader context in making this determination.[7]

In a related context, this court has considered whether insurance coverage is applicable to *Tevis* claims raised in a divorce action. *Merrimack Mut. Fire Ins. Co. v. Coppola,* 299 *N.J.Super.* 219, 690 *A.*2d 1059 (App.Div.1997). The court analyzed whether the defendant's subjective intent with respect to the consequences of his intentionally abusive conduct towards his wife was relevant in determining whether insurance coverage exists or is excluded for injuries expected or intended. It determined that public policy requires application of an objective test, resulting in a presumption of intent to injure for *Tevis* claims, regardless of any contrary subjective intent asserted, because of the reprehensible nature of the act. The court stated:

> Given the fact that our Supreme Court has recognized the seriousness of spousal abuse, and has even considered the problem of domestic violence to be a "national epidemic," (*See Brennan, supra,* 145 *N.J.* at 298–299, 678 *A.*2d 667), allowing spouse abusers insurance coverage for their intentional abuse, whether it be physical or emotional, would contravene the public policy clearly enunciated by our Supreme Court, and the intent of the Legislature in its enactment of the Prevention of Domestic Abuse Act. *Clearly, coverage for spousal abuse, in any form,*

---

[6] *N.J.S.A.* 2C:2–2b(3), defines reckless as:

> A person acts recklessly with respect to a material element of an offense [causing injury to the victim] when he consciously disregards a substantial and unjustifiable risk that that material element ... will result from his conduct. The risk must be of such a nature and degree that, considering the nature and purpose of the actor's conduct and the circumstances known to him, its disregard involves a gross deviation from the standard of conduct that a reasonable person would observe in the actor's situation.

[7] We note that the domestic violence complaint alleged a prior act of domestic violence by Bittner against Ewan.

> would encourage those who are disposed to commit such reprehensible acts to inflict injury upon their spouses with impunity, knowing that their insurance companies will indemnify them for the money damages recovered by their spouses if only they can convince some jury that they did not intend or expect bodily harm to flow from their conduct. Therefore, we conclude that spousal abuse in any form is "so inherently injurious, that it can never be an accident," and therefore, "[a]s a matter of public policy and logic ... the better rule warrants application of the objective approach," to the end that the intent to injure is presumed from the performance of the act. Voorhees, supra, 128 N.J. 165, 185, 607 A.2d 1255 (1992) (quoting Atlantic Employers, supra, 239 N.J.Super. [276] at 283, 571 A.2d 300).
> [Id. at 230, 690 A.2d 1059 (emphasis added).]

Here, we consider an act asserted by Bittner to be reckless, not intentional. He argues that since the domestic violence complaint could be fairly read to alternatively include an allegation of reckless conduct, he should not be denied coverage. Outside the domestic violence rubric, a complaint with such alternative bases for liability is not ordinarily excluded from the duty to defend, and if liability is found to exist based on unintentional conduct, the insurer ordinarily has a duty to indemnify. However, when a complaint is brought under the PDVA, the policy considerations expressed by the *Merrimack* court lead us to conclude that insurance coverage must be excluded.

In *Cumberland Mutual Fire Insurance Co. v. Beeby*, 327 N.J.Super. 394, 743 A.2d 853 (App.Div.2000), we considered the applicability of insurance coverage where plaintiff brought an injury claim in a civil action against her long-term paramour on alternative theories of negligent and intentional conduct. It was unclear whether the underlying incident constituted an act of domestic violence. We determined that the resolution of that issue would control the coverage issue. We stated:

> However, we need not explore the limits of defining "wilful harm or knowing endangerment" [policy exclusion language] because the narrow issue presented here is whether defendant's conduct, once judicially reviewed, rises to the level of being an act of domestic violence. We hold that whatever definition of wilful harm or knowing endangerment is applied, if there is a finding of domestic violence, the holding of *Merrimack* and the exclusionary provision of the policy will be satisfied. To find otherwise would reinstate the concept of intent in a domestic violence context, a position that we have previously rejected in both *Merrimack* and *Tevis v. Tevis*, 155 N.J.Super. 273, 382 A.2d 697 (App.Div.1978), rev'd on other grounds, 79 N.J. 422, 400 A.2d 1189 (1979).

[*Id.* at 403, 743 *A*.2d 853.]

■ Acts of domestic violence have been identified by the Legislature as particularly reprehensible acts which needed to be addressed by special remedial legislation. *N.J.S.A.* 2C:25–18. Our Supreme Court has recognized the extreme importance of this issue and of the need to interpret the PDVA in the broadest terms to provide maximum protection to the victims of domestic violence. *Cesare, supra,* 154 *N.J.* at 400, 713 *A*.2d 390. A finding that an act of domestic violence has been committed can be made only upon proofs submitted or an admission, supported by a sufficient factual basis. That finding embraces multifaceted considerations which transcend satisfaction of the specific elements of the predicate criminal offense. A court may determine, for example, that the present act is sufficiently egregious to constitute an act of domestic violence with no prior history of abuse, and it may conversely determine that "an ambiguous incident qualifies as prohibited conduct, based on a finding of violence in the parties' past." *Id.* at 402, 713 *A*.2d 390. Thus, the mental state of the perpetrator is but one factor to be evaluated, in the context of other relevant factors, in the overall determination of whether an act of domestic violence has been committed.

■ When a claim for monetary damages for bodily injury is made in a Family Part action brought under the PDVA, the claim necessarily alleges an act of domestic violence as the sole basis for recovery, and an award can only be made upon a finding that such an act occurred and directly caused the loss. *N.J.S.A.* 2C:25–29b(4). We hold that the public policy of this State, to provide maximum protection to victims of domestic violence and to deter acts of domestic violence, precludes the availability of insurance coverage to provide a defense for such a claim or indemnification for such an award.

Affirmed.