827 A.2d 335 (2003)
362 N.J. Super. 161
F.S., Plaintiff-Respondent,
v.
L.D., K.D., E.D., L.D., Jr., and Mrs. J.D., Defendants/Third-Party Plaintiffs/Respondents,
v.
Allstate New Jersey Insurance Company, Third-Party Defendant/Appellant.
Superior Court of New Jersey, Appellate Division.
Argued May 21, 2003.
Decided July 16, 2003.
*336 Peter F. Bariso, Jr., argued the cause for appellant Allstate New Jersey Insurance Company (Chasan, Leyner, Bariso & Lamparello, attorneys; Mr. Bariso, of counsel and on the brief; Cindy Nan Vogelman, Secaucus and Catherine G. Gingeleskie, on the brief).
Robert E. Taylor, Jr. argued the cause for respondent F.S. (Rothenberg & Pashaian, attorneys; Dean S. Pashaian, of counsel, Union; Mr. Taylor, on the brief).
Richard M. Sasso, Warren, argued the cause for defendants/third-party plaintiffs/respondents L.D., K.D., E.D., L.D., Jr., and Mrs. J. D. (Mr. Sasso and Ruderman & Glickman attorneys, Springfield, Mr. Sasso, of counsel; Allan C. Roth, on the brief).
Before Judges KING, LISA and FUENTES.
The opinion of the court was delivered by FUENTES, J.A.D.
In this appeal, we are asked to decide two separate questions: (1) whether an insurer is required, under a homeowner's insurance policy, to indemnify and defend an insured named as a defendant in a civil action brought by his former fiance, alleging negligent infliction of emotional distress based on his failure to inform her that he was infected with the Human Immunodeficiency Virus (HIV) during the time they were involved in a sexual relationship; and (2) whether such coverage, if any, also extends to the insured's adult children, residing with him during the time of his relationship with the plaintiff, who are also named as defendants based on their failure to disclose to her their father's HIV-positive status. The Law Division granted the insured's summary judgment motion, and directed third-party defendant Allstate New Jersey Insurance Company (Allstate), to indemnify and defend L.D. and his adult children in this litigation. The motion judge also awarded the insured counsel fees and cost of suit in the amount of $17,684.20.
By leave granted, Allstate now appeals arguing that the Law Division erred when it failed to view the allegations against the insured as intentional acts under the holding in Voorhees v. Preferred Mut. Ins. Co., 128 N.J. 165, 607 A.2d 1255 (1992), and, thus, outside the policy's scope of coverage. We agree that under Voorhees, Allstate has no legal duty to defend D. based on the allegations contained in plaintiff's *337 pleadings. As to the adult children, regardless of the potential legal merits of plaintiff's cause of action, we conclude that Allstate has a duty to defend these defendants.

I
The salient facts are not in dispute. Plaintiff F.S. (S.) began a sexual relationship with D. in February 2001. In 1997, D. became aware that he contracted HIV. He did not tell S. of his HIV-positive status until several months after they had been sexually active. D. claims that he always used a condom before engaging in sexual intercourse with S. In answers provided to plaintiff's interrogatories D. indicated that he told his adult children that he had informed S. of his HIV-positive status prior to commencing a sexual relationship with her. As of this date, S. has not tested positive for HIV.
S. ended her relationship with D. immediately after learning he was HIV positive. Although she has tested negative for HIV, S. claims that as a result of her unknowing exposure to the disease, she suffers from "severe emotional, mental, and physical distress." Her symptoms include "depression and anxiety, insomnia, intermediate panic attacks and overwhelming despair." She has been treated for her depression and anxiety by psychologist Dr. Benjamin Goldberg. According to Dr. Goldberg, S.'s unknowing exposure to AIDS has caused a "severe impairment of trust and the concomitant conviction that she would be alone, and possibly sick, for the rest of her life." These fears have caused psychological trauma which will permanently impair her quality of life.
Count one of S.'s complaint against D. states a theory of liability based on negligence or reckless conduct. That is, D. negligently caused her emotional distress by failing to inform her of his HIV-positive status. Count two is based on intentional or wanton conduct. Counts three and four assert the same theories of liability against D.'s adult children, alleging a breach of an unspecified legal duty owed to the plaintiff by their failure to inform her of their father's medical condition. Count five asserts a cause of action against all of the defendants based on the negligent or intentional misrepresentation of D.'s physical condition. S. seeks compensatory and punitive damages.
D. is the named insured under a homeowner's policy issued by Allstate for his house in South Plainfield. Section II of the policy entitled "Family Liability and Guest Medical Protection" provides:
Subject to the terms, conditions and limitations of this policy, Allstate will pay damages which an insured person becomes legally obligated to pay because of bodily injury or property damage arising from an occurrence to which this policy applies, and is covered by this part of the policy.
We do not cover any bodily injury or property damage intended by, or which may reasonably be expected to result from the intentional acts or omissions of, the insured person.
The policy defines an "occurrence" as an "accident, including continuous or repeated exposure to substantially the same general harmful conditions during the policy period, resulting in bodily injury or property damage." Those insured under the policy include "you and, if a resident of your household ... any relative."

*338 II
On appeal from a grant of summary judgment, we use the same standard as the motion judge: first we decide whether there is a genuine issue of material fact, and if none, we then decide whether the Law Division's ruling on the law is correct. Brill v. Guardian Life Ins. Co., 142 N.J. 520, 523, 666 A.2d 146 (1995); Southern Jersey Family Med. Ctrs., Inc. v. City of Pleasantville, 351 N.J.Super. 262, 279, 798 A.2d 120 (App.Div.), aff'd, o.b., 176 N.J. 184, 821 A.2d 1147 (2003); Prudential Prop. & Cas. Ins. Co. v. Boylan, 307 N.J.Super. 162, 167, 704 A.2d 597 (App. Div.1998); R. 4:46-2.
We begin our analysis with well-established principles of insurance law. In a dispute involving coverage under a liability policy, the insured has the burden "to bring the claims within the basic terms of the policy." Sears Roebuck and Co. v. Nat'l Union Fire Ins. Co., 340 N.J.Super. 223, 234, 774 A.2d 526 (App.Div.), certif. denied, 169 N.J. 608, 782 A.2d 426 (2001). See also Cobra Prods., Inc. v. Fed'l Ins. Co., 317 N.J.Super. 392, 401, 722 A.2d 545 (App.Div.1998), certif. denied, 160 N.J. 89, 733 A.2d 494 (1999). However, the insurer's duty to defend the insured is broader than its duty to indemnify. Grand Cove II Condo. Assoc., Inc. v. Ginsberg, 291 N.J.Super. 58, 71, 676 A.2d 1123 (App.Div. 1996). As Judge Pressler stated in Hartford Ins. Group v. Marson Constr. Corp., 186 N.J.Super. 253, 257, 452 A.2d 473 (App.Div.1982), certif. denied, 93 N.J. 247, 460 A.2d 656, (1983):
The insurer's obligation to defend is triggered by a complaint against the insured alleging a cause of action which may potentially come within the coverage of the policy, irrespective of whether it ultimately does come within the coverage and hence irrespective of whether the insurer is ultimately obliged to pay.
The duty to defend arises when the complaint against the insured "states a claim constituting a risk insured against." Danek v. Hommer, 28 N.J.Super. 68, 77, 100 A.2d 198 (App.Div.1953), aff'd o.b., 15 N.J. 573, 105 A.2d 677 (1954). In order to determine whether an insurer has a duty to defend, the complaint must be "laid alongside the policy" to compare the allegations with the language of the policy. Ibid. In this context, the duty to defend arises when the comparison reveals that if the allegations of the complaint are sustained, the insurer will be required to pay any resulting judgment. "Any doubts are resolved in favor of the insured." Sears Roebuck and Co. v. Nat'l Union Fire Ins. Co., supra, 340 N.J.Super. at 241, 774 A.2d 526.
It is well-settled that "policy provisions that exclude coverage resulting from intentional wrongful acts are `common,' are `accepted as valid limitations,' and are consistent with public policy." Harleysville Ins. Companies, v. Garitta, 170 N.J. 223, 231, 785 A.2d 913 (2001) (quoting Allstate Ins. Co. v. Malec, 104 N.J. 1, 6, 514 A.2d 832 (1986)). Here, the policy language unambiguously excludes from coverage "the intentional acts or omissions of the insured person." This is further crystalized by the definition of the coverage-triggering term "occurrence" as an accident.
In Voorhees v. Preferred Mut. Ins. Co., supra, 128 N.J. at 183, 607 A.2d 1255, the Court held that:
the accidental nature of an occurrence is determined by analyzing whether the alleged wrongdoer intended or expected to cause an injury. If not, then the resulting injury is "accidental," even if the act that caused the injury was intentional.
D. thus argues that because he never engaged in sexual relations with S. *339 without using a condom, he did not intend nor expect to cause her any harm. D. misses the point. His decision to use a condom only relates to the actual transmission of the virus. Plaintiff's cause of action is not based on her contracting HIV, but on her non-consensual exposure to the virus. The injury she sustained is psychological.
The analysis generally focuses on whether the tortfeasor subjectively intended to cause harm to the injured party, "[e]ven when the actions in question seem foolhardy and reckless." Voorhees, supra, at 184, 607 A.2d 1255. However,
[w]hen the actions are particularly reprehensible, the intent to injure can be presumed from the act without an inquiry into the actor's subjective intent to injure. That objective approach focuses on the likelihood that an injury will result from an actor's behavior rather than on the wrongdoer's subjective state of mind.

[Id.]
Guided by this principle, we have denied coverage in suits based on violations of the Domestic Violence Act, Bittner v. Harleysville Ins. Co., 338 N.J.Super. 447, 769 A.2d 1085 (App.Div.2001); to individuals sued for spousal abuse, Merrimack Mut. Fire v. Coppola, 299 N.J.Super. 219, 690 A.2d 1059 (App.Div.1997); and in cases involving the sexual molestation of children, Atlantic Employers v. Tots & Toddlers, 239 N.J.Super. 276, 571 A.2d 300 (App.Div.), certif. denied, 122 N.J. 147, 584 A.2d 218 (1990)[1].
Here, it is difficult to imagine a more "particularly reprehensible" act. D.'s actions constituted a profound violation of S.'s fundamental right to self-determination. By unilaterally deciding not to inform her of his HIV-positive status, D. deprived S. of her right to choose whether or not to assume the risk, no matter how slight, of being infected with a potentially fatal illness which also carries an unfortunate but undeniable social stigma.[2] Indeed, the degree of public disapproval of D.'s actions is such that the Legislature has criminalized the conduct and exposed those who engage in such conduct to a term of imprisonment of up to five years and $15,000 fine. N.J.S.A. 2C:34-5b;[3]N.J.S.A. 2C:43-6a(3); N.J.S.A. 2C:43-3b(1).
Courts which have confronted this issue in other jurisdictions have come to a similar conclusion. In the celebrated case of Aetna Casualty & Surety Co., v. Sheft, 989 F.2d 1105 (9th Cir.1992), involving a suit against the estate of actor Rock Hudson *340 by his former paramour, the court reached the following conclusion:
It is undisputed that Hudson knew that he was infected with the AIDS virus, and that he intentionally misrepresented and concealed his condition with the intent to induce Christian to engage in high risk sex over a period of nearly eight months. Hudson put Christian's health in jeopardy during an eight month period by willfully exposing Christian to the deadly AIDS virus. Finally, as a result of Hudson's misrepresentation, Christian suffered severe emotional distress. We therefore believe the California Supreme Court would ... hold that Hudson's knowing exposure of Christian to a deadly disease was inherently harmful.

[Id. at 1108.]
See also Allstate Ins. Co. v. Myers, 951 F.Supp. 1014, 1018 (M.D.Fla.1996); R.W. v. T.F., 528 N.W.2d 869, 872 (Minn.1995).
Therefore, as a matter of public policy, we apply the Voorhees objective test and hold that D.'s intent to cause S. severe emotional and psychological trauma can be presumed by his decision to engage in sexual intercourse with her while intentionally withholding knowledge of his HIV-positive status.

III
Our analysis with respect to the claims against D.'s adult children lead us to a different conclusion. As best as we can discern, S.'s cause of action is based on the children's failure to inform her of their father's HIV-positive status. This theory of liability presumes a legal duty on the part of adult children to affirmatively seek out and inform their father's romantic liaisons of his affliction with a sexually transmittable disease. Viewing the factual allegations in the light most favorable to S., it can be argued that she has presented a cause of action sounding in negligence. That is, D.'s children negligently assumed that their father would tell his fiance about his HIV-positive status.
The test for determining whether an insurer has a duty to defend does not take into account the legal viability of the action against the insured. "An insurer's duty to defend is determined by comparing the allegations in the complaint with the policy language. When the two correspond, the insurer has a duty to defend regardless of the claim's actual merit." Aetna Cas. & Surety Co. v. Ply Gem Indus. Inc., 343 N.J.Super. 430, 778 A.2d 1132 (App.Div.), certif. denied, 170 N.J. 390, 788 A.2d 774 (2001) (citations omitted). Here, the policy language clearly covers the negligent acts of the named insured's relatives who reside with him as a part of the same household. These defendants are thus entitled to be defended by Allstate.

IV
On the question of counsel fees, we vacate the award of counsel fees attributable to the claims against D. We remand the question of counsel fees as to D.'s adult children for the trial court to make specific findings as to the amount of fees these defendants are entitled to receive. In doing so, the court must specifically review counsel's affidavit of services under R. 4:42-9, and make specific findings regarding the reasonableness of the legal services performed on behalf of these defendants. Golden Estates v. Cont'l Cas. Co., 317 N.J.Super. 82, 91, 721 A.2d 307 (App.Div. 1998).

V
The Law Division's order directing Allstate to defend and indemnify D. is reversed. *341 The order directing Allstate to defend D.'s adult children is affirmed.
NOTES
[1] Although Atlantic Employers predates Voorhees, Justice Garabaldi, writing for the Court in Voorhees, adopted the objective test utilized in Atlantic Employers in her analysis of the issues presented in Voorhees.
[2] See official website for The Center for Disease Control and Prevention, HIV Prevention Strategic Plan Through 2005 (Nov. 27, 2002), available at www.cdc.gov/hiv/wad.htm "Stigma associated with HIV/AIDS continues to profoundly affect prevention efforts, leading people to deny risk ...... avoid testing...... delay treatment ...... and suffer needlessly. While stigma's pernicious effects are perhaps most obvious in countries other than the U.S., where people may be shunned and physically harmed, stigma negatively affects Americans as well. It is found at the structural level, in the form of laws and regulations, as well as more explicitly at community and individual levels."
[3] This statute provides that: "A person is guilty of a crime of the third degree who, knowing that he or she is infected with human immune deficiency virus (HIV) or any other related virus identified as a probable causative agent of acquired immune deficiency syndrome (AIDS), commits an act of sexual penetration without the informed consent of the other person."