RECORD IMPOUNDED

 NOT FOR PUBLICATION WITHOUT THE
 APPROVAL OF THE APPELLATE DIVISION
 This opinion shall not "constitute precedent or be binding upon any court."
 Although it is posted on the internet, this opinion is binding only on the
 parties in the case and its use in other cases is limited. R.1:36-3.

 SUPERIOR COURT OF NEW JERSEY
 APPELLATE DIVISION
 DOCKET NO. A-1177-15T2

D.L.,

 Plaintiff-Appellant,

v.

S.L.,

 Defendant-Respondent.
____________________________________

 Submitted May 16, 2017 – Decided July 28, 2017

 Before Judges Suter and Grall.

 On appeal from the Superior Court of New
 Jersey, Chancery Division, Family Part, Bergen
 County, Docket No. FV-02-2100-15.

 D.L., appellant pro se.

 Law Offices of Crew Schielke, L.L.C., attorneys for
 respondent (Crew Schielke, on the brief).

PER CURIAM

 Plaintiff D.L. appeals the October 6, 2015 order dismissing

her complaint filed under the Prevention of Domestic Violence Act

(the Act), N.J.S.A. 2C:25-17 to -35, and vacating the June 1, 2015
temporary restraining order (TRO) entered in her favor.1 We

affirm.

 I.

 On May 31, 2015, D.L. (Debbie) and S.L. (Steve),2 who were

divorcing, met in front of Steve's parents' house for Steve to

drop off their two young children to Debbie, as they agreed to in

a consent order from their matrimonial case. Another matrimonial

order from April 2015 provided the parties "shall not introduce a

significant other to the parties' children." In clear violation

of that order, Steve arrived with his girlfriend in the car along

with the children. Debbie became "upset," entered Steve's vehicle

to pick up their son, while telling Steve he was violating the

order. An argument commenced, which continued as Steve and Debbie

transferred the children from Steve's to Debbie's vehicle. Debbie

testified Steve pushed her repeatedly while she was holding their

son. Steve said that Debbie hit him in the jaw as he was holding

their daughter. When Steve was between the open car door and the

car, Debbie tried to close the door on him, but in the process,

1
 Defendant S.L. did not appeal the dismissal of his complaint and
TRO against D.L. arising from the same events.
2
 We use initials and pseudonyms throughout the opinion because of
the underlying domestic violence litigation. R. 1:38-3. We have
used first names for the parties because they have the same last
name.

 2 A-1177-15T2
she was knocked to the ground. Steve then tried to take their son

into the house, but Debbie wedged herself between him and the

child. She claimed Steve put his hands on her neck and threatened

to kill her. Debbie was secretly making an audio recording on her

phone, just as she had done twelve times prior, but the recording

was allegedly incomplete because it failed to record the threat.

Steve was scratched and Debbie was bruised, although the bruises

were not apparent immediately. She did not seek medical attention.

 The police charged Debbie with assault. The parties

separately applied for TROs from a municipal court judge, but no

restraints were granted.

 On June 1, 2015, Debbie filed a domestic violence complaint

in the Superior Court, which alleged the predicate offenses of

assault, N.J.S.A. 2C:12-1; harassment, N.J.S.A. 2C:33-4; and

terroristic threats, N.J.S.A. 2C:12-3, and was granted a TRO

against Steve. The complaint did not list any prior incidents of

domestic violence, but did state defendant "is very violent, hot

tempered, intimidating and threatening" and that he "has a history

of drug abuse," and it listed three domestic violence docket

numbers and a matrimonial docket number.

 On June 5, 2015, Steve filed a domestic violence complaint

in the Superior Court and applied for a TRO, which was granted.

 3 A-1177-15T2
His complaint alleged the predicate acts of assault, harassment

and stalking, N.J.S.A. 2C:12-10(b).

 The parties' complaints were tried together before a Family

Division judge who was familiar with the parties through their

matrimonial case. On October 6, 2015, following four days of

trial, the judge entered an order that dismissed Debbie's domestic

violence complaint because the court "determined that the

plaintiff's allegations of domestic violence ha[ve] not been

substantiated," and also dismissed the TRO.3

 In its oral October 6, 2015 decision, the court found that

it had the "benefit of seeing the parties . . . during the course

of extended proceedings" and "to observe the parties." The court

presided over their matrimonial action and "had the benefit of

seeing the parties there, too." Because of this, the court stated

it could "speak with a greater ability to address credibility, and

. . . whether they are afraid of the other party."

 In addressing the predicate acts, the court found the May 31

confrontation constituted "domestic contretemps" and was not

domestic violence. Neither party proved an intent to harass. The

court found Debbie did not prove Steve committed terroristic

threats and rejected Steve's claim that Debbie stalked him.

3
 Steve's domestic violence complaint also was dismissed but that
order was not included in the record on appeal.

 4 A-1177-15T2
However, the court found "there was an assault" and that the

parties purposely and recklessly "caused bodily injury to another,

not of a serious nature."

 The court declined to enter a restraining order, finding

there was no need to "protect the victim from immediate danger or

to prevent further abuse." The court took into account Debbie's

testimony about the events on May 31 and her agreement in 2014 to

dismiss a prior TRO. Debbie testified she feared Steve but when

asked what she was afraid of answered "I don't know. I'm afraid

that something is going to happen to me." The court did not

"observe any . . . body language" that Debbie was "in fact . . .

in fear of the defendant." As the court stated, "I sat and I

observed her during the course of the proceedings, and my sense

was not that she's afraid of her safety[.]" Further, the court

found Debbie "knew exactly what she was doing" because she recorded

twelve other contacts with Steve, none of which "yielded any

incidents," and "was in a situation where she could control what

she had to say because she knew exactly what she was doing." With

respect to Steve, the court found there "was not a moment that

[the court] felt that [Steve] was in any way afraid of his wife,

and he needed a restraining order to protect his life, safety or

well-being[.]" The court found "that [n]either party met, by a

 5 A-1177-15T2
preponderance of the evidence, that they needed a restraining

order to protect their life, safety and well-being."

 Debbie alleges on appeal that the court abused its discretion

by relying on preconceived notions about the parties from the

matrimonial proceedings, misapplying the law and circumventing

court rules. These alleged errors included not admitting relevant

evidence, denying certain cross-examination, not ruling on a

specific charge or ruling on a charge that was not alleged, and

in the court's conduct of the trial proceedings. Debbie alleges

the court "led" defense counsel, abused its discretion in allowing

Steve to ask questions of the judge and relied on inaccurate notes

of the proceedings. We have considered these arguments in light

of the record and applicable law and conclude none have merit.

 II.

 Our review of a trial court's factual findings is limited.

Factual findings are binding on appeal when supported by adequate,

substantial, credible evidence. Rova Farms Resort, Inc. v. Inv'rs

Ins. Co., 65 N.J. 474, 484 (1974). Findings and conclusions of

the trial judge are entitled to enhanced deference in family court

matters. Cesare v. Cesare, 154 N.J. 394, 413 (1998). We defer

to credibility assessments made by a trial court unless they are

manifestly unsupported by the record, because the trial court had

the critical ability to observe the parties' conduct and demeanor

 6 A-1177-15T2
during the trial. See N.J. Div. of Youth & Family Servs. v. E.P.,

196 N.J. 88, 104 (2008); Weiss v. I. Zapinsky, Inc., 65 N.J. Super.

351, 357 (App. Div. 1961). We are mindful of the deference owed

to the determinations made by family judges who hear domestic

violence cases. See Cesare, supra, 154 N.J. at 411-12.

 The entry of a domestic violence restraining order requires

the trial court to make certain findings. See Silver v. Silver,

387 N.J. Super. 112, 125-26 (App. Div. 2006). The court "must

determine whether the plaintiff has proven, by a preponderance of

the credible evidence, that one or more of the predicate acts set

forth in N.J.S.A. 2C:25-19(a) has occurred." Id. at 125. The

court should make this determination "in light of the previous

history of violence between the parties." Ibid. (quoting Cesare,

supra, 154 N.J. at 402). Next, the court must determine whether

a restraining order is required to protect the party seeking

restraints from future acts or threats of violence. Id. at 126-

27. That means "there [must] be a finding that 'relief is

necessary to prevent further abuse.'" J.D. v. M.D.F., 207 N.J.

458, 476 (2011) (quoting N.J.S.A. 2C:25-29(b)).

 We discern no error by the court in its conclusion that the

predicate acts of harassment and terroristic threats were not

proven by a preponderance of the evidence. "The Supreme Court has

emphasized the care a trial court must exercise to distinguish

 7 A-1177-15T2
between ordinary disputes and disagreements between family members

and those acts that cross the line into domestic violence." R.G.

v. R.G., 449 N.J. Super. 208, 225 (App. Div. 2017) (citing J.D.,

supra, 207 N.J. at 475-76). In Peranio v. Peranio, 280 N.J. Super.

47, 56-57 (App. Div. 1995), we found the Act was not intended to

address a "domestic contretemps" such as bickering or arguments

between married parties.

 A person commits the offense of harassment if, "with purpose

to harass another, he . . . [s]ubjects another to striking,

kicking, shoving, or other offensive touching, or threatens to do

so." N.J.S.A. 2C:33-4(b). In evaluating a defendant's intent, a

judge is entitled to use "[c]ommon sense and experience." State

v. Hoffman, 149 N.J. 564, 577 (1997). Because direct proof of

intent is often absent, "purpose may and often must be inferred

from what is said and done and the surrounding circumstances," and

"[p]rior conduct and statements may be relevant to and support an

inference of purpose." State v. Castagna, 387 N.J. Super. 598, 606

(App. Div.), certif. denied, 188 N.J. 577 (2006); see also H.E.S.

v. J.C.S., 175 N.J. 309, 327 (2003) ("'[A] purpose to harass may

be inferred from . . . common sense and experience.'" (quoting

Hoffman, supra, 149 N.J. at 577)).

 A person commits the offense of terroristic threats if "he

threatens to commit any crime of violence with the purpose to

 8 A-1177-15T2
terrorize another." N.J.S.A. 2C:12-3(a). The offense is also

committed if a person "threatens to kill another with the purpose

to put him in imminent fear of death under circumstances reasonably

causing the victim to believe the immediacy of the threat and the

likelihood that it will be carried out." N.J.S.A. 2C:12-3(b).

 The court's rejection of both the harassment and terroristic

threats charges rested squarely on its credibility determination

that although the parties' argument escalated to a physical

encounter, there was no evidence of a purpose or intent by Steve

to engage in the confrontation in order to harass Debbie, or to

threaten violence or imminent fear of death. The court found the

parties behaved "miserably" toward each other, but that what

occurred was "domestic contretemps" and not domestic violence.

 The court did find that assault occurred. A simple assault

is committed when a person "[a]ttempts to cause or purposely,

knowingly or recklessly causes bodily injury to another[.]"

N.J.S.A. 2C:12-1(a)(1). "'Bodily injury' means physical pain,

illness or any impairment of physical condition[.]" N.J.S.A.

2C:11-1(a). We agree with the trial court that the record

supported the claim of assault because the parties recklessly

caused minor injury to each other during the incident.

 This finding did not end the analysis required by the Act.

"Commission of a predicate act is necessary, but alone

 9 A-1177-15T2
insufficient, to trigger relief provided by the Act." R.G., supra,

449 N.J. Super. at 228 (citing Silver, supra, 387 N.J. Super. at

126-27 (stating once a plaintiff establishes a predicate act, the

court must determine "whether a restraining order is necessary,

upon an evaluation of the [factors] . . . to protect the victim

from an immediate danger or to prevent further abuse")); see also

Bittner v. Harleysville Ins. Co., 338 N.J. Super. 447, 454 (App.

Div. 2001). A court must also consider additional factors that

include "(1) [t]he previous history of domestic violence between

the [parties], including threats, harassment and physical abuse;

(2) [t]he existence of immediate danger to person or property;

. . . [and] (4) [t]he best interests of the victim and any child."

N.J.S.A. 2C:25-29(a)(1), (2) and (4).

 We defer to the Family Part judge's credibility assessments

because she had the ability to observe the parties in the domestic

violence trial and their matrimonial proceedings. See Cesare,

supra, 154 N.J. at 412-13. Debbie expressed that she was fearful

of Steve, but she could not say what she feared. Her body language

did not show fear. Debbie "knew what she was doing" when she

secretly recorded defendant. Of the twelve prior contacts that

were recorded, there were no incidents indicating immediate

danger. Debbie agreed to dismiss a prior TRO because she lacked

proof. On this record, we agree with the trial court's finding

 10 A-1177-15T2
based on its credibility assessment that Debbie did not establish

the need for a restraining order.

 The other arguments raised on appeal present limited need for

discussion. Debbie claims that a singular statement in a case

management conference suggested that the court held preconceived

beliefs about the parties. We are confident based on our review

of the proceedings that the court decided the case based on the

evidence without any bias or pre-judgment by the trial court.

 Debbie contends the court erred in making certain evidentiary

rulings. Our review "is limited to examining the decision for

abuse of discretion." Hisenaj v. Kuehner, 194 N.J. 6, 12 (2008)

(citing Brenman v. Demello, 191 N.J. 18, 31 (2007)). "Considerable

latitude is afforded a trial court in determining whether to admit

evidence, and that determination will be reversed only if it

constitutes an abuse of discretion." State v. Feaster, 156 N.J.

1, 82 (1998) (citations omitted), cert. denied, 532 U.S. 932, 121

S. Ct. 1380, 149 L. Ed. 2d 306 (2001); see also State v. J.A.C.,

210 N.J. 281, 295 (2012) (citations omitted). An appellate court

should not substitute its own judgment for that of the trial court,

unless "the trial court's ruling 'was so wide of the mark that a

manifest denial of justice resulted.'" State v. Marrero, 148 N.J.

469, 484 (1997) (quoting State v. Kelly, 97 N.J. 178, 216 (1984)).

 11 A-1177-15T2
 Much of Debbie's criticism focused on her requests to expand

testimony about a party for Steve's father on May 23, 2015. We

are fully satisfied, however, that the court did not abuse its

discretion in its evidentiary rulings with respect to the May 23rd

party.

 The court did not err in permitting Steve's counsel to present

evidence in support of the stalking claim after he seemed to rest

his case. His failure appeared to be inadvertent, the trial was

still in progress, Debbie's counsel had a full opportunity to

cross-examine Steve, and there was no prejudice given the court's

ruling that Steve failed to prove the claim. A trial is to be a

"search for truth." See McKenney v. Jersey City Med. Ctr., 167

N.J. 359, 370 (2001) (citation omitted); Kernan v. One Wash. Park

Urban Renewal Assocs., 154 N.J. 437, 467 (1998) (Pollock, J.,

concurring). The court's ruling was consistent with that

objective.

 On appeal, Debbie relies on a magazine article from the "The

Police Chief" to support her contention that she was stalked, but

she did not allege that predicate act in her domestic violence

complaint nor was the article part of the evidence before the

trial court. The trial court properly did not make any ruling on

her allegation she was stalked by Steve, because it was never part

 12 A-1177-15T2
of her complaint and her counsel acknowledged "[i]t's a - -

defense. It's not - - a claim."

 Debbie's contention the judge did not rule on her terroristic

threats claim is erroneous because the judge stated, "I certainly

don't find that there were terroristic threats that occurred

. . . ." Even if this comment related to Steve's claim against

Debbie instead of her claim against him, she was not prejudiced

because of the court's finding that a restraining order was not

necessary to protect either of the parties.

 Debbie's further arguments are without sufficient merit to

warrant discussion in a written opinion. R. 2:11-3(e)(1)(E).

 Affirmed.

 13 A-1177-15T2