**RECORD IMPOUNDED**

**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court."
Although it is posted on the internet, this opinion is binding only on the
parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-4998-15T3

E.K.S.,

    Plaintiff-Respondent,

v.

A.C.S.,

    Defendant-Appellant.

_____

Submitted September 13, 2017 — Decided June 28, 2018

Before Judges Manahan and Suter.

On appeal from Superior Court of New Jersey,
Chancery Division, Family Part, Monmouth
County, Docket No. FV-13-0343-16.

Destribats Campbell Staub, LLC, attorneys for
appellant (Raymond C. Staub, on the brief).

Dwyer, Bachman & Newman, LLC, attorneys for
respondent (Howard A. Bachman, of counsel and
on the brief).

PER CURIAM

    A.C.S. (Allen)[1] appeals the entry of a final restraining order

(FRO) on April 13, 2016, under the Prevention of Domestic Violence

_____

[1] We use initials and pseudonyms throughout the opinion because
of the underlying domestic violence litigation. R. 1:38-3.

Act (the Act), N.J.S.A. 2C:25-17 to -35. We affirm the FRO, but vacate the amount of attorney's fees assessed in the May 27, 2016 order, remanding that issue to the Family Part to determine such fees as are "reasonable."

I.

Allen and E.K.S. (Edna) were divorced in 2014. They have two boys, who were ages seven and eleven in 2016 when the FRO was entered.

Allen was driving both children to his house in Metuchen from Edna's house in Manalapan because he and the boys were going to Florida for a vacation the next day. The boys were looking at their iPads, when the younger son started making "weird sounds" and the older son began to read aloud "a provocative text" that appeared on the screen. Allen "[w]hipped the car over very fast and grabbed the iPads" whereupon he saw a nude photo of Edna that she sent to her paramour along with some compromising text. It was clear Edna's paramour was a client of her employer and was married, but not to Edna. Allen took a photo of the text message and looked at the five or six additional photographs of Edna that appeared. He advised Edna by text of what occurred and sent her the photo he took of her text message to her paramour. It was clear she had accidently transmitted the photos and texts to the

iPad through the iCloud. Allen agreed to return to Manalapan so Edna could remove the materials from the iPads.

Allen was concerned Edna might then prevent the boys from going on vacation, so only the younger child went into the house while the older one stayed in the car in the driveway with Allen. It took a long time for Edna to remove the personal materials from the iPads, and during the wait, the parties' text messages were less than complimentary.

When Allen returned from Florida he contacted Edna, telling her to agree to waive his financial arrears or he would disseminate the comprising materials to her paramour, his wife and family, and her employer. Edna was concerned that dissemination would have employment ramifications because her paramour was a client of Edna's employer. Therefore, she agreed to waive nearly $10,000 in financial arrears but wanted Allen to agree in writing not to disseminate the materials. When he would not agree to this, she applied for a temporary restraining order (TRO) under the Act, alleging that Allen was harassing her by threatening to send "explicit and compromising" pictures of her to her employer and friends if she did not waive the child support arrears he owed. He also threatened to "expose [Edna] causing her to lose her job and fear[ed] that [Allen] will expose the affair causing that marriage to fail."

The TRO application reported an incident two years earlier where Allen allegedly threatened to shave Edna's head while she was sleeping, resulting in a consent order to stay away from each other. Edna's TRO also alleged that during the marriage, Allen would "kick and shove her" and that he had held her down by her neck.[2] The TRO was granted on August 28, 2015. It prevented Allen from contacting Edna and a list of other individuals, who included Edna's paramour, his wife and her sister, and Edna's employer.[3]

Edna and Allen testified at the FRO trial. The Family Part judge found that Edna was "very credible" but that Allen was only credible in part. In an oral opinion, the judge found that Edna proved she was harassed by Allen. He had no legitimate purpose in taking a photograph of the compromising text message. He also had no legitimate purpose in coercing her to waive outstanding financial arrears. His purpose was to "torture her, to make her miserable, to make her upset, to annoy her and alarm her."

The court found a need to protect Edna from further harassment because Allen would not otherwise stop the threats. The court

---

[2] There was no testimony about this at the subsequent FRO hearing. We do not have a transcript of the 2015 TRO hearing.

[3] Eventually, all of the listed individuals were removed from the TRO but not until they received subpoenas and thus became aware of the allegations. Edna was suspended from her employment and lost her biggest account.

considered the "prior history between the parties." It also took into consideration their marital settlement agreement where they agreed not to disclose or transmit any personal photographs that were taken during the marriage.[4]

The court entered a FRO that prohibited communication between Allen and Edna except by email. The court awarded attorney's fees. On May 27, 2016, the court entered a separate order assessing $16,667.50 in attorney's fees against Allen.

On appeal, Allen alleges that the Family Part judge erred in entering the FRO because the evidence was insufficient to prove harassment, the court's analysis was flawed about the need to protect Edna under the Act, and it should not have awarded attorney's fees to Edna. Allen contends the court interfered with his ability to cross-examine Edna during the trial.

## II.

Our review of a trial court's factual findings is limited. We accord "great deference to discretionary decisions of Family Part judges," Milne v. Goldenberg, 428 N.J. Super. 184, 197 (App. Div. 2012), in recognition of the "family courts' special jurisdiction and expertise in family matters." N.J. Div. of Youth

_____

[4] In addition, the court found no legitimate need for the subpoenas.

and Family Servs. v. M.C. III, 201 N.J. 328, 343 (2010) (quoting Cesare v. Cesare, 154 N.J. 394, 413 (1998)). "[F]indings by the trial court are binding on appeal when supported by adequate, substantial, credible evidence." Cesare, 154 N.J. at 411-12 (citing Rova Farms Resort, Inc. v. Inv'rs Ins. Co., 65 N.J. 474, 484 (1974)). We defer to credibility assessments made by a trial court unless they are manifestly unsupported by the record, because the trial court had the critical ability to observe the parties' conduct and demeanor during the trial. See N.J. Div. of Youth & Family Servs. v. E.P., 196 N.J. 88, 104 (2008). We are mindful of the deference owed to the determinations made by family judges who hear domestic violence cases. See Cesare, 154 N.J. at 411-12.

The entry of a domestic violence restraining order requires a trial court to make certain findings. See Silver v. Silver, 387 N.J. Super. 112, 125-26 (App. Div. 2006). The court "must determine whether the plaintiff has proven, by a preponderance of the credible evidence, that one or more of the predicate acts set forth in N.J.S.A. 2C:25-19(a) has occurred." Id. at 125. The court should make this determination "in light of the previous history of violence between the parties." Ibid. (quoting Cesare, 154 N.J. at 402).

Next, the court must determine whether a restraining order is required to protect the party seeking restraints from future acts or threats of violence. Silver, at 126-27. That means "there [must] be a finding that 'relief is necessary to prevent further abuse.'" J.D. v. M.D.F., 207 N.J. 458, 476 (2011) (quoting N.J.S.A. 2C:25-29(b)). "The Supreme Court has emphasized the care a trial court must exercise to distinguish between ordinary disputes and disagreements between family members and those acts that cross the line into domestic violence." R.G. v. R.G., 449 N.J. Super. 208, 225 (App. Div. 2017) (citing J.D., 207 N.J. at 475-76).

Here, the Family Part judge found Allen committed harassment. A person commits the offense of harassment if,

> with purpose to harass another, he (a) [m]akes, or causes to be made, a communication or communications . . . [in] any other manner likely to cause annoyance or alarm; . . . or (c) [e]ngages in any other course of alarming conduct or of repeatedly committed acts with purpose to alarm or seriously annoy such other person.
>
> [N.J.S.A. 2C:33-4(a) and (c).]

"Integral to a finding of harassment . . . is the establishment of the purpose to harass . . . ." Corrente v. Corrente, 281 N.J. Super. 243, 249 (App. Div. 1995). "A person acts purposely with respect to the nature of his conduct or a

result thereof if it is his conscious object to engage in conduct of that nature or to cause such a result." State v. Hoffman, 149 N.J. 567, 577 (1997) (quoting N.J.S.A. 2C:2-2(b)(1)). Thus, to find harassment, there must be proof that a defendant's conscious object was to "harass," that is, "annoy," "torment," "wear out," or "exhaust." Castagna, 387 N.J. Super. at 607 (quoting Webster's II New College Dictionary 504 (1995)). "A finding of a purpose to harass may be inferred from the evidence presented," and "[c]ommon sense and experience may inform that determination." Hoffman, 149 N.J. at 577 (citations omitted).

A restraining order will not issue based solely on the commission of a predicate offense listed in the Act. Bittner v. Harleysville Ins. Co., 338 N.J. Super. 447, 454 (App. Div. 2001) (citing N.B. v. T.B., 297 N.J. Super. 35, 40 (App. Div. 1997)). A court must consider additional factors that include "(1) [t]he previous history of domestic violence between the [parties], including threats, harassment and physical abuse; (2) [t]he existence of immediate danger to person or property; . . . [and] (4) [t]he best interests of the victim and any child . . . . ." N.J.S.A. 2C:25-29(a)(1), (2) and (4). Indeed, "the guiding standard is whether a restraining order is necessary, upon an evaluation of the factors set forth in N.J.S.A. 2C:25-29(a)(1) to

-29(a)(6), to protect the victim from an immediate danger or to prevent further abuse." <u>Silver</u>, 387 N.J. Super. at 127.

We agree the record supported the finding that Allen committed the act of harassment against Edna. The court found Allen's purpose was to annoy and alarm Edna. We agree that there was no purpose for Allen to take a photograph of the compromising materials except to use this against Edna sometime in the future. There certainly was no purpose to threaten to disseminate the materials except to improperly extract from Edna her agreement to waive financial arrears. Had Allen believed he did not owe arrears, he simply could have showed Edna or the court receipts for the monies that he paid.

We also agree there was support for the finding that the FRO was necessary to protect Edna from Allen's harassment. The potential use of compromising photos and videos was not a new issue for these parties. The divorce settlement included a provision that prevented dissemination of such materials that were taken during the marriage. When Edna's photos and texts to her paramour were accidently obtained by Allen, he used them as his "insurance" despite the divorce agreement. In fact, there was no

proof that all of the materials were destroyed,[5] nor would Allen sign an agreement not to disseminate them, supporting the court's conclusion that Allen would not stop the harassment without a FRO.

There is no merit to Allen's contention that the court unnecessarily interfered with his ability to cross-examine Edna.

> While we recognize that a witness's interest or bias is an appropriate subject of inquiry, a cross-examiner does not have a license to roam at will under the guise of impeaching credibility . . . . A trial judge has broad discretion to determine the proper limits of cross-examination of a witness whose credibility is put in issue.
>
> [State v. Engel, 249 N.J. Super. 336, 375 (App. Div. 1991) (citations omitted)].

Our review of the record did not show any abuse by the trial court in its rulings regarding the permissible scope of cross-examination.

We do find error, however, with one aspect of the attorney fee award. Although Allen appeals only the April 13, 2016 FRO, which awarded fees, and not the May 27, 2016 attorney fee order, which awarded the dollar amount of those fees, we choose to address both aspects of the attorney fee award for completeness.

---

[5] Allen testified that he took two pictures and then deleted the rest. Edna alleged that he set up a false Facebook account where he disseminated the information. The court made no findings with respect to either allegation.

The purpose of the Act is "to assure the victims of domestic violence the maximum protection from abuse the law can provide." N.J.S.A. 2C:25-18. A judge is allowed by the Act to award "monetary compensation for losses suffered as a direct result of the act of domestic violence," including reasonable attorneys' fees. N.J.S.A. 2C:25-29(b)(4). We have said that because attorneys' fees under the Act are part of compensatory damages, "attorneys' fees are not subject to the traditional analysis contained in N.J.S.A. 2A:34-23 and Williams v. Williams, 59 N.J. 229 (1971)." McGowan v. O'Rourke, 391 N.J. Super. 502, 507 (App. Div. 2007) (quoting Schmidt v. Schmidt, 262 N.J. Super. 451, 453 (Ch. Div. 1992)). We approved the holding in Schmidt "that to be entitled to fees, '[t]he fees must be a direct result of the domestic violence; they must be reasonable; and pursuant to R. 4:42-9(b), they must be presented by affidavit.'" Id. at 507 (alteration in original) (quoting Schmidt, 262 N.J. Super. at 454). However, an award of fees rests within the discretion of the trial judge. Packard-Bamberger & Co. v. Collier, 167 N.J. 427, 443-444 (2001).

Here, there was no abuse of discretion in awarding attorney's fees to Edna as compensatory damages. However, fees under the Act must be reasonable. Because the court did not find that the $16,667.50 in fees was reasonable, we are constrained to vacate

the dollar amount of the fees in the May 27, 2016 order and remand to the Family Part the issue of determining the reasonable amount of those fees. In performing that analysis, the court is to consider the factors set forth in Rule 4:42-9(b) and RPC 1.5.

Affirmed in part; the dollar amount of the attorney's fees awarded in May 27, 2016 order is vacated; we remand the case to the Family Part to determine what amount of attorney fees are reasonable and to make appropriate findings under Rule 1:7-4(a). We do not retain jurisdiction.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-4998-15T3